**PERKINS COIE LLP**
James G. Snell (Bar No. 173070)
JSnell@perkinscoie.com
3150 Porter Drive
Palo Alto, California 94304-1212
Telephone: +1.650.838.4300
Facsimile: +1.650.838.4350

Lauren J. Tsuji (Bar No. 300155)
LTsuji@perkinscoie.com
Anna Thompson-Lanners *(Pro Hac Vice)*
AThompsonLanners@perkinscoie.com
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Telephone: +1.206.359.8000
Facsimile: +1.206.359.9000

*Attorneys for Defendant Humble Bundle, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID WRAY, JAMAHL FARRINGTON, MATTHEW BURROW, and NIKOLAS PULLEN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HUMBLE BUNDLE, INC.,<br><br>Defendant. | Case No. 3:25-cv-01592<br><br>**DEFENDANT HUMBLE BUNDLE, INC.'S MOTION TO COMPEL ARBITRATION**<br><br>Date: September 16, 2025<br>Time: 2:00 p.m.<br>Location: Courtroom 9, 19th Floor<br>Judge: Hon. Trina L. Thompson |

**NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at 2:00 p.m. on September 16, 2025, in Courtroom 9, 19th Floor of the U.S. District Court for the Northern District of California, located at San Francisco, California, Humble Bundle, Inc., will move to compel arbitration and stay this matter. This Motion is made pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*

This Motion is based on the Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Shawn Cheatham in Support of Humble Bundle's Motion to Compel Arbitration, and accompanying exhibits, other portions of the record, and any argument that may be presented to the Court.

DATED: June 20, 2025

**PERKINS COIE LLP**

By: *James G. Snell*

*Attorney for Defendant Humble Bundle, Inc.*

**STATEMENT OF ISSUES TO BE DECIDED**

Whether this action should be compelled to arbitration and stayed pending the outcome of the arbitration.

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 1

A. Plaintiffs Agreed to Humble Bundle's Terms When They Signed Up for Accounts and Made Purchases on the Website ..... 1

1. Plaintiffs agreed to Humble Bundle's Terms when they signed up for their accounts. ..... 2

2. Plaintiffs agreed to Humble Bundle's Terms when they purchased bundles. ..... 3

B. Plaintiffs Agreed to Arbitrate Their Disputes with Humble Bundle ..... 5

C. Plaintiffs Ignored Their Agreement to Arbitrate with Humble Bundle by Filing This Lawsuit ..... 6

III. ARGUMENT ..... 7

A. Legal Standard ..... 7

B. A Valid Arbitration Agreement Exists ..... 7

1. Plaintiffs had reasonably conspicuous notice of the Terms. ..... 8

2. Plaintiffs unambiguously manifested their assent to the Terms ..... 10

C. The Parties Delegated to the Arbitrator the Question of Whether Their Agreement to Arbitrate Reaches Plaintiffs' Claims ..... 10

D. Even If the Parties Had Not Delegated the Question of Arbitrability, Plaintiffs' Claims Fall Within the Arbitration Provision ..... 12

E. Humble Bundle's Arbitration Provision Is Not Unconscionable ..... 13

IV. CONCLUSION ..... 16

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Aggarwal v. Coinbase, Inc.*,
685 F. Supp. 3d 867 (N.D. Cal. 2023) ....11

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ....7

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ....7, 8

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ....11, 12

*Brooks v. Warner Media Direct, LLC*,
No. 23 Civ. 11030, 2024 WL 3330305 (S.D.N.Y. July 8, 2024) ....13, 14

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) ....7, 10

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) ....7

*Donovan v. Coinbase Glob., Inc.*,
649 F. Supp. 3d 946 (N.D. Cal. 2023) ....12, 13

*Ghazizadeh v. Coursera, Inc.*,
737 F. Supp. 3d 911 (N.D. Cal. 2024) ....7, 9

*Heckman v. Live Nation Entertainment, Inc.*,
120 F.4th 670 (9th Cir. 2024) ....14, 15

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019) ....11

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024) ....8, 9

*Kohler v. Whaleco, Inc.*,
757 F. Supp. 3d 1112 (S.D. Cal. 2024) ....10

*Lambrix v. Tesla, Inc.*,
No. 23-cv-01145-TLT (N.D. Cal. Sept. 27, 2023) ....10

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ....8, 10

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Pilon v. Discovery Commc'ns, LLC*,
No. 24-CV-4760, 2025 WL 752244 (S.D.N.Y. Mar. 10, 2025) ....15

*Pizarro v. QuinStreet, Inc.*,
No. 22-cv-02803, 2022 WL 3357838 (N.D. Cal. Aug. 15, 2022) ....9

*Rent-A-Ctr., W., Inc. v. Jackson*,
561 U.S. 63 (2010) ....11

*Ruiz v. CarMax Auto Superstores*,
No. EDCV 23-1986, 2024 WL 1136332 (C.D. Cal. Jan. 18, 2024) ....14

*Sarhadi v. Pear Health Labs, Inc.*,
No. 24-CV-07921-TLT, 2025 WL 1350033 (N.D. Cal. Apr. 18, 2025)....8, 9

*Smith v. Spizzirri*,
601 U.S. 472 (2024) ....7

*Tercero v. Sacramento Logistics LLC*,
No. 24-cv-00953, 2025 WL 43125 (E.D. Cal. Jan. 7, 2025) ....14

**STATUTES**

Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ....7, 11

Video Privacy Protection Act, 18 U.S.C. § 2710, *et seq*....1, 6, 13

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Humble Bundle, Inc. ("Humble Bundle") respectfully asks the Court to compel this action to arbitration pursuant to the parties' agreements to arbitrate.

When Plaintiffs David Wray, Jamahl Farrington, Matthew Burrow, and Nikolas Pullen created accounts and made purchases on Humble Bundle's website—the conduct that allegedly provides the basis for their claims for violation of the Video Privacy Protection Act, 18 U.S.C. § 2710, *et seq*. ("VPPA")—each unequivocally and repeatedly agreed to arbitrate those claims. In fact, Plaintiffs concede that they acknowledged and agreed to Humble Bundle's Terms and Conditions ("Terms"), including its mandatory arbitration provision, by signing up for accounts and purchasing games. Rather than meaningfully contesting that they validly agreed to arbitrate their claims against Humble Bundle, Plaintiffs' Complaint suggests that the arbitration agreement's mass filing provisions are unconscionable. But those provisions are similar to ones that have consistently been found valid and enforceable by courts nationwide, and there is no basis to find differently here.

By filing this lawsuit, Plaintiffs disregard their contractual obligations. Humble Bundle asks the Court to hold the Plaintiffs to their agreement, compel arbitration, and stay this action.

## II. BACKGROUND

### A. Plaintiffs Agreed to Humble Bundle's Terms When They Signed Up for Accounts and Made Purchases on the Website

Humble Bundle's website allows users to purchase and then download video games, software, ebooks, and other digital content. Complaint ¶ 42 (ECF No. 1); *see also* Declaration of Shawn Cheatham in Support of Motion to Compel Arbitration ¶ 4 ("Cheatham Decl."). Users can purchase this content individually, or as part of a "bundle"—that is, a limited-time collection of games, books, software, and other content. Cheatham Decl. ¶ 4. Plaintiffs each claim that they created an account and, through these accounts, purchased games and bundles on the website. [1] *See*

[1] Users may purchase a bundle without first logging into their accounts. Cheatham Decl. ¶ 5. However, to purchase individual content, users must login before continuing to the purchase screen. *Id.*; *see also* Ex. A at Fig. 5.

Compl. ¶¶ 47, 58, 64, 70. And they concede that in order to sign up for an account and thereby make a purchase on the website, users must acknowledge agreement to the Terms. *Id.* ¶ 44 ("Prior to clicking the blue 'Sign Up' button . . . there is an *acknowledgment that, by signing up, the user . . . agrees to Humble Bundle's Terms & Conditions* and Privacy Policy.") (emphasis added); *see also id.* ¶ 80 ("Humble Bundle's Arbitration Agreement is contained within the company's Terms of Service and is part of a standardized clickwrap contract that users are required to accept in full as a requirement of using the Website.").

### 1. Plaintiffs agreed to Humble Bundle's Terms when they signed up for their accounts.

Plaintiffs allege that customers are required "to sign up for an account when purchasing video games or other content through [Humble Bundle's w]ebsite." *Id.* ¶ 42. Users may create an account in one of two ways: either by clicking "Sign Up" in a banner visible at the top of every page of the website or by creating a password at checkout while completing a purchase. Cheatham Decl. ¶ 5. In either event, users are required to click a prominent blue button labeled "SIGN UP" or "Continue to Payment." *Id.*; *see also* Cheatham Decl. ¶ 6; Ex. A at Figs. 1–3. Below this button, they are presented with text in a contrasting font informing them as follows: "By signing up, you confirm that you are 13 years of age or older, and you agree to Humble Bundle's Terms & Conditions and Privacy Policy," or, if during checkout, "By completing this purchase, you agree to the Terms of Service and Privacy Policy." Ex. A at Fig. 1. The "Terms" text is prominently underlined and contains a hyperlink directing users to the complete Terms. *Id.* at Figs. 1–3. These features are illustrated in the account-creation screenshot shown below:




When a user selects the hyperlink, the Terms are displayed in their entirety—including the arbitration provision. Cheatham Decl. ¶ 7. As discussed further below, the beginning of the Terms informs users in all capital letters that "THESE TERMS CONTAIN A BINDING ARBITRATION CLAUSE AND A CLASS ACTION WAIVER." *Id.* ¶ 8; Ex. B.

**2. Plaintiffs agreed to Humble Bundle's Terms when they purchased bundles.**

Plaintiffs were also required to agree to the Terms each time they purchased a bundle on the website. Cheatham Decl. ¶ 6. On the checkout page when a user purchases a bundle, directly below a prominent blue button labeled "Continue to Payment" and in text set off in its own paragraph, Humble Bundle explains that "[b]y completing this purchase, you agree to the <u>Terms of Service</u> and <u>Privacy Policy</u>." Ex. A, Fig. 2. Users can review the Terms by clicking an underlined hyperlink to these agreements. Cheatham Decl. ¶ 7.




The Terms are also underlined and hyperlinked again on this same purchase screen in a separate "Order Summary" box that remains visible at all times. Ex. A at Fig. 4.




Here, too, when a user selects the hyperlink, the Terms are displayed in their entirety. Cheatham Decl. ¶ 7.

All of the named Plaintiffs made multiple purchases from Humble Bundle, including bundles, and all therefore agreed to arbitrate their claims by assenting to the arbitration provision in the Terms, which has been in effect since June 1, 2023. *Id.* ¶ 9. Plaintiffs Wray, Farrington, and Pullen all claim they made purchases on Humble Bundle's website after June 1, 2023. Compl. ¶¶ 49, 60, 72. Specifically, Plaintiff Wray claims he purchased the video game bundle "Destiny 2: The Story So Far" on March 3, 2024. *Id.* ¶ 49; Compl. Ex. B (ECF No. 1–2). Plaintiff Farrington claims he purchased the video game "Dragon's Dogma 2" on March 20, 2024. Compl. ¶ 60; Compl. Ex. D (ECF No. 1–4). Plaintiff Pullen claims he purchased the video game bundle "S.T.A.L.K.E.R." on October 30, 2023. Compl. ¶ 72; Compl. Ex. H (ECF No. 1–8). All of these purchases are confirmed by records maintained by Humble Bundle. *See* Cheatham Decl. ¶ 9. As to Plaintiff Burrow, he claims that he purchased the video game "Chrono Trigger" on April 2, 2023 and attaches a screenshot of an email purporting to confirm this purchase. Compl. ¶ 66; Compl. Ex. F (ECF No. 1–6). Humble Bundle's records confirm that Plaintiff Burrow has made multiple purchases on the website since then, including as recently as March 27, 2025. Cheatham Decl. ¶ 9. Humble Bundle's records further confirm that all Plaintiffs have purchased multiple bundles since June 1, 2023. As explained above, users must agree to Humble Bundle's Terms each time they purchase a bundle on the website, so all Plaintiffs necessarily agreed to the arbitration provision in the Terms. *See* Section II.A.2, *supra*.

Thus, each named Plaintiff agreed to the arbitration clause in the current version of the Terms, and each is subject to mandatory arbitration.

**B. Plaintiffs Agreed to Arbitrate Their Disputes with Humble Bundle**

The Terms require arbitration of most disputes with Humble Bundle. *See generally* Ex. B.

They begin by informing users that "THESE TERMS CONTAIN A BINDING ARBITRATION CLAUSE AND A CLASS ACTION WAIVER" and also instruct users to "PLEASE READ THIS DOCUMENT CAREFULLY BEFORE CLICKING ON THE PURCHASE BUTTON." *Id.* at 1.

Section 10(i) of the Terms—titled "ARBITRATION NOTICE"—makes clear that:

- It applies to "**all disputes and claims** between us, except for claims arising from bodily injury or that pertain to enforcing, protecting, or the validity of your or our intellectual property rights" and explicitly applies to disputes and claims "[t]o the fullest extent permitted by applicable law." This "includes, but is not limited to: claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, fraud, misrepresentation or any other statutory or common-law legal theory." *Id.* at 13 (emphasis in original).

- The parties "**each agree to resolve the dispute through binding arbitration or small claims court instead of in courts of general jurisdiction**." *Id.* (emphasis in original).

- "**Any arbitration under this Agreement will take place on an individual basis; class arbitrations and class actions are not permitted**." *Id.* (emphasis in original).

- "**[B]y entering into this Agreement, you and we are each waiving the right to participate in a class action and to a trial by jury to the fullest extent permitted by applicable law**." *Id.* (emphasis in original).

- "All issues are for the arbitrator to decide, except as otherwise expressly provided herein." *Id.* at 15.

- "The arbitration will be governed by applicable rules of National Arbitration & Mediation ('NAM')[2] (including the Comprehensive Dispute Resolution Rules and Procedures and/or the Supplemental Rules for Mass Arbitration Filings, as applicable) ('NAM Rules'), as modified by this Arbitration Agreement, and will be administered by NAM" *Id.* at 14.

- "**TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, YOU AND WE AGREE THAT EACH PARTY MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR OUR INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS, REPRESENTATIVE, OR PRIVATE ATTORNEY GENERAL PROCEEDING**." *Id.* at 16 (emphasis in original).

### C. Plaintiffs Ignored Their Agreement to Arbitrate with Humble Bundle by Filing This Lawsuit

Despite repeatedly agreeing to arbitrate "all disputes and claims" with Humble Bundle, Plaintiffs brought this action in Court on behalf of themselves and others similarly situated. Compl. ¶ 93. Plaintiffs' claims are expressly based on their purchase of video games through the website and the alleged disclosure of these purchases to third parties in violation of the VPPA. *Id.* ¶¶ 6, 102–111. Accordingly, Plaintiffs' claims are subject to binding arbitration with NAM.

[2] NAM is a "full-service provider of [alternative dispute resolution] services" and has been operating for over 30 years. *See* About NAM, https://www.namadr.com/about/ (last visited June 20, 2025). Its panel includes former judges and practicing specialists with expertise across a range of practice areas. *Id.*

## III. ARGUMENT

### A. Legal Standard

Humble Bundle moves to compel arbitration under Sections 3 and 4 of the Federal Arbitration Act ("FAA"). 9 U.S.C. §§ 3, 4. The FAA embodies a "national policy favoring arbitration," and its "overarching purpose . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344, 346 (2011) (cleaned up). To determine whether parties have agreed to arbitrate a dispute, courts are "limited to determining" two questions: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If both conditions are met or if—as here—the first condition is met (i.e., the parties entered an agreement to arbitrate) and the parties delegated to the arbitrator resolution of the second condition (i.e., the scope of the agreement to arbitrate), the Court is required to compel arbitration and stay the court proceeding. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("[T]he [FAA] leaves no place for the exercise of discretion by a district court"); *Chiron*, 207 F.3d at 1130 (same); *see also Smith v. Spizzirri*, 601 U.S. 472, 476 (2024) (holding that courts must issue a stay when compelling a case to arbitration).

### B. A Valid Arbitration Agreement Exists

Each Plaintiff agreed to mandatory arbitration at least twice—once when they signed up for their accounts and again when they completed their video game purchases. In fact, Plaintiffs concede that they could not—and did not—make purchases on Humble Bundle's website without acknowledging the Terms. Compl. ¶¶ 44, 80. Plaintiffs therefore agreed to arbitrate "all disputes and claims [with Humble Bundle], except for claims arising from bodily injury or that pertain to enforcing, protecting, or the validity of your or our intellectual property rights[.]" *See* Ex. B at 13.

Federal courts generally find sign-in wrap agreements like the one Plaintiffs entered into with Humble Bundle enforceable.[3] *See, e.g.*, *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911,

[3] Plaintiffs suggest that Humble Bundle's Terms are "a standardized clickwrap contract that users are required to accept in full as a requirement of using the Website." Compl. ¶ 80. These types of agreements, too, are regularly held to be enforceable. *See, e.g.*, *Berman v. Freedom Fin. Network,*

923 (N.D. Cal. 2024) (explaining that "[i]n a sign-in wrap, or a 'modified clickwrap agreement,' a user is 'notified of the existence of the website's terms of use and advise[d] that by making some type of affirmative act, often by clicking a button, she is agreeing to the terms of service" and finding agreement enforceable) (citation omitted); *Sarhadi v. Pear Health Labs, Inc.*, No. 24-CV-07921-TLT, 2025 WL 1350033, at *4 (N.D. Cal. Apr. 18, 2025) (explaining that in a sign-in wrap agreement, "a website notifies the user of the existence of the website's terms of use and, instead of providing an 'I agree' button, advises the user that he or she is agreeing to the terms of service when registering or signing up" and finding agreement enforceable) (citation omitted); *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515 (9th Cir. 2023) (affirming compelled arbitration where users, "when creating an account, signing into an account, and completing a purchase" were presented with "a confirmation button above which text informs the user that, by clicking on this button, 'you agree to our Terms of Use.'"); *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1013 (9th Cir. 2024) (similar).

On a motion to compel arbitration, "a sign-in wrap agreement may be an enforceable contract based on inquiry notice if '(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms.'" *Sarhadi*, 2025 WL 1350033, at *5 (cleaned up). Both conditions are easily satisfied here.

**1. Plaintiffs had reasonably conspicuous notice of the Terms.**

Both the context of the transaction and the visual aspects of the website provided reasonably conspicuous notice of the Terms. *See, e.g.*, *Keebaugh*, 100 F.4th at 1019–20 (considering both the "context of the transaction" and the "placement of the notice" in determining whether plaintiffs were on notice that they were agreeing to terms) (citation omitted); *Sarhadi*, 2025 WL 1350033, at *5–7 (same).

*First*, as to the context of the transaction, all Plaintiffs signed up for accounts with Humble Bundle and made multiple purchases on the website. *See* Compl. ¶¶ 47, 58, 64, 70; *see also*

---

*LLC*, 30 F.4th 849, 856 (9th Cir. 2022) (confirming that "courts have routinely found clickwrap agreements enforceable").

Cheatham Decl. ¶ 9. Thus, Plaintiffs' interactions with Humble Bundle were "more than a one-time purchase or transaction" and instead involved an "ongoing relationship." *Sarhadi*, 2025 WL 1350033, at *6; *see also, e.g.*, *Ghazizadeh*, 737 F. Supp. 3d at 925 ("[A] user engaging in a full registration process, as opposed to a one-time purchase, is more likely to expect a continuing relationship that would put her on notice for a link to the terms of that continuing relationship."). Plaintiffs should have reasonably expected this relationship to be governed by some terms, and thus the context of the transaction supports reasonably conspicuous notice.

*Second*, as to the visual placement of the notice, the Terms were displayed via a conspicuous hyperlink directly below the "Sign Up" and "Continue to Payment" buttons during both the account-creation and checkout processes. *See* Section II.A, *supra*. In both instances, the Terms are conspicuously underlined , capitalized, and hyperlinked, and appear in contrasting font against an uncluttered screen. *Id.* And in both instances, users were notified that "[b]y signing up, you confirm that you are 13 years of age or older, and you agree to Humble Bundle's Terms & Conditions and Privacy Policy," or "By completing this purchase, you agree to the Terms of Service and Privacy Policy." *Id.*

The Terms therefore satisfy the visual requirements to provide conspicuous notice that "a reasonably prudent Internet user would have seen." *Keebaugh*, 100 F.4th at 1020 (citation omitted). They are "conspicuously displayed directly . . . below the action button," the design elements use a "contrasting font color making the notice legible," the sign-in screen "lacks clutter and uses customary design elements denoting the existence of a hyperlink," and the statement "clearly denotes that continued use will constitute acceptance of the Terms[.]" *Id.* at 1020–21 (citations and internal quotation marks omitted). Consistent with this standard, judges in this district have repeatedly held that users agreed to mandatory arbitration via similar sign-in wrap agreements. *See*, *e.g.*, *Sarhadi*, 2025 WL 1350033, at *9 (enforcing arbitration agreement in sign-in wrap agreement where terms were hyperlinked in contrasting font color and appeared against an uncluttered screen); *Ghazizadeh*, 737 F. Supp. 3d at 924 (same, where terms were hyperlinked, placed directly below an action button, and accompanied by the statement "By creating an account, I accept [Defendant's] Terms of Service"); *Pizarro v. QuinStreet, Inc.*, No. 22-cv-02803, 2022 WL 3357838, at *2, *4

(N.D. Cal. Aug. 15, 2022) (same, where terms were hyperlinked under an action button with the statement "By clicking [the proceed button], you agree to the [Terms of Use]"); *see also* Order Granting Motion to Compel Arbitration at 10, *Lambrix v. Tesla, Inc.*, No. 23-cv-01145-TLT (N.D. Cal. Sept. 27, 2023), ECF No. 112 (Thompson, J.) (finding plaintiff agreed to arbitrate where she was "required to click a 'Place Order' button accompanied by language that stated '[b]y placing this order, I agree to the [terms]").

**2. Plaintiffs unambiguously manifested their assent to the Terms.**

The second part of the analysis—whether Plaintiffs "took some action that unambiguously manifested the user's assent to the agreement"—is "straightforward on these facts." *Oberstein*, 60 F.4th at 517. To create their accounts, Plaintiffs were required to provide an email address, and create a password (Compl. ¶¶ 42, 44), and affirmatively click a button labeled "SIGN UP." *See* Section II.A.1, *supra*. To purchase bundles, Plaintiffs were required to click a button labeled "CONTINUE TO PAYMENT." *See* Section II.A.2, *supra*. In both instances, they were given conspicuous notice that "[b]y signing up, you confirm that you are 13 years of age or older, and you agree to Humble Bundle's Terms & Conditions and Privacy Policy" and [b]y completing this purchase, you agree to the Terms of Service and Privacy Policy." Ex. A, Figs. 1–2. "[T]hat is all that is required." *Oberstein*, 60 F.4th at 517; *see also, e.g.*, *Kohler v. Whaleco, Inc.*, 757 F. Supp. 3d 1112, 1124 (S.D. Cal. 2024) (holding that plaintiff "unambiguously assented" to arbitration provision "by pressing the 'Continue' button multiple times prior to purchasing items on [defendant's] website").

Plaintiffs thus agreed to arbitrate all disputes with Humble Bundle by completing a sign-in wrap and purchase process that required their confirmation that they accepted the Terms. This Court should enforce their agreement to arbitrate.

**C. The Parties Delegated to the Arbitrator the Question of Whether Their Agreement to Arbitrate Reaches Plaintiffs' Claims**

Because Plaintiffs agreed to arbitrate, the first condition to compel arbitration is satisfied. *Chiron*, 207 F.3d at 1130. The only remaining condition is that the "agreement encompasses the dispute at issue." *Id.* But the parties delegated to the arbitrator resolution of the scope and

enforceability of their agreement. *See* Ex. B at 13. The Court therefore may not address the second condition; it is required to compel arbitration. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) (holding that when arbitrability issues have been delegated, courts "may not decide" them and must compel arbitration); *Aggarwal v. Coinbase, Inc.*, 685 F. Supp. 3d 867, 878 (N.D. Cal. 2023) (same).

The FAA "allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions." *Henry Schein*, 586 U.S. at 65. Parties do so by including in their arbitration agreement a delegation clause that limits the issues a court may decide. *Aggarwal*, 685 F. Supp. 3d at 878. Parties show their intent to delegate in two ways: (1) by including a clause that expressly delegates arbitrability issues, *id.*, or (2) by incorporating the arbitration tribunal's rules that empower the arbitrator to decide such issues, *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) ("[W]e hold that incorporation of the [arbitration tribunal's] rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability."). When an arbitration provision states that the arbitrator has the authority to decide all disputes related to the agreement or it incorporates by reference arbitration rules, the parties have delegated issues of arbitrability and the court's analysis ends. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010); *Aggarwal*, 685 F. Supp. 3d at 878 ("When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract.") (citation omitted).

The arbitration provision in Humble Bundle's Terms delegates threshold arbitrability issues in two ways: (1) through an express delegation clause and (2) by incorporating NAM's arbitration rules.

*First*, the parties expressly delegated arbitrability issues by agreeing that "[a]ll issues are for the arbitrator to decide, except as otherwise expressly provided herein." Ex. B at 15. The parties thus agreed that enforceability of the arbitration provision is an issue to be arbitrated. *Rent-A-Ctr.*, 561 U.S. at 68 (affirming delegation where the agreement gave the arbitrator "exclusive authority to resolve any dispute relating to the enforceability of this Agreement" (cleaned up)); *Aggarwal*, 685 F. Supp. 3d at 878 (affirming delegation where the agreement gave the arbitrator "exclusive

authority to resolve any Dispute"); *see also Donovan v. Coinbase Glob., Inc.*, 649 F. Supp. 3d 946, 951 (N.D. Cal. 2023) ("A delegation clause, which is an agreement to arbitrate threshold issues concerning the arbitration agreement, constitutes clear and unmistakable evidence of an intent to delegate.") (internal quotation marks and citations omitted).

*Second*, Humble Bundle's arbitration provision expressly incorporates the "applicable rules of [NAM] (including the Comprehensive Dispute Resolution Rules and Procedures and/or the Supplemental Rules for Mass Arbitration Filings, as applicable)." Ex. B at 14. Those rules empower arbitrators to decide questions of their jurisdiction, so incorporating them in the arbitration provision again confirms the parties' intent to delegate. *Brennan*, 796 F.3d at 1130; *see also* NAM Comprehensive Dispute Resolution Rules and Procedures, Rule No. 17(B) ("The Arbitrator(s) shall have the authority to determine any issue about the interpretation and applicability of these Rules and conduct of the Arbitration proceeding. The Arbitrator(s) shall have the authority to determine jurisdiction and arbitrability including, but not limited to, any issue regarding the validity, existence, formation, or scope of the agreement under which Arbitration is being sought, and the proper parties to the Arbitration.").

By expressly stating that questions of arbitrability are for the arbitrator, and by incorporating the NAM Rules, the parties confirmed their intent to delegate any issues about the scope or enforceability of the arbitration provision. Any such issues (and any other issues about arbitrability) must therefore be arbitrated rather than litigated in court.

### D. Even If the Parties Had Not Delegated the Question of Arbitrability, Plaintiffs' Claims Fall Within the Arbitration Provision

Even if the Court were to conclude that the parties did not delegate the issue of scope and other arbitrability questions—which they did—Plaintiffs would still be required to arbitrate their claims with Humble Bundle. The arbitration provision in the Terms is broad and requires the parties to resolve "all disputes and claims . . . except for claims arising from bodily injury or that pertain to enforcing, protecting, or the validity of . . . intellectual property rights." Ex. B at 13. The agreement therefore extends to Plaintiffs' use of Humble Bundle's website to purchase video

games, including the alleged disclosure of the video game titles they purchased. *See* Compl. ¶¶ 102–111. Indeed, each Plaintiff agreed to the arbitration provision in the course of undertaking the very conduct they claim gives rise to their claims for violation of the VPPA—that is, purchasing video games featuring cut scenes on the website. If the Court reaches the question of whether Plaintiffs and Humble Bundle's agreement to arbitrate covers the claims, the Court should conclude that it does and compel arbitration.

**E. Humble Bundle's Arbitration Provision Is Not Unconscionable**

In an attempt to extract themselves from their repeated agreements to arbitrate their claims against Humble Bundle, Plaintiffs suggest that the arbitration provision is substantively unconscionable due to its mass filing procedures. *See* Compl. ¶¶ 82–92. But these procedures, which are set forth clearly in the arbitration agreement, are designed to efficiently resolve coordinated mass filings through staging, and there is nothing unconscionable about them. Plaintiffs cannot satisfy their burden of invalidating the arbitration agreement on unconscionability grounds. *See, e.g.*, *Donovan*, 649 F. Supp. 3d at 952 ("The party resisting arbitration bears the burden of demonstrating unconscionability.") (citation omitted).

Humble Bundle's mass filing provision applies where 25 or more claimants seek to arbitrate "similar claims" brought by "the same or coordinated counsel or entities" and sets forth a staged procedure that allows 50 claims to proceed in the first round, 100 claims to proceed in the second round, and 200 claims to proceed in the third round, until all of the remaining claims are resolved. Ex. B at 16–17; *see also* Compl. ¶¶ 85–86. During the pendency of these proceedings, "[a]ny applicable limitations period (including statute of limitations)" is tolled. Ex. B at 16.

Courts regularly find arbitration provisions involving batching and staging of coordinated claims to be enforceable and not unconscionable. In *Brooks v. Warner Media Direct, LLC*, for example, the court considered whether an arbitration agreement incorporating the NAM Rules—including the Supplemental Rules for Mass Arbitration Filings—was substantively unconscionable and held that it was not. No. 23 Civ. 11030, 2024 WL 3330305, at *17–18 (S.D.N.Y. July 8, 2024). There, the staging procedure allowed "fifty claims to proceed in the first round, one hundred claims

to proceed in the second round, and two hundred claims to proceed in the third round," similar to the one at issue here. *Id.* at *18. While the plaintiffs argued that this procedure created "undue delays in consumers' ability to bring claims" and gave the defendant "an unfair advantage in the arbitration process," the court disagreed, noting that the procedure allowed "many more arbitrations [to] occur in a much quicker timeframe[.]" *Id.* at *17–18. The court also explained that because the applicable statute of limitations is tolled as soon as a consumer files a notice of dispute, there was no risk of claims becoming time-barred. *Id.* at *18. Likewise, in *Ruiz v. CarMax Auto Superstores*, the arbitration provision at issue required claims brought by 20 or more individuals, raising similar facts and legal issues, and brought by the same or coordinated legal counsel, to be adjudicated in batches of ten. No. EDCV 23-1986, 2024 WL 1136332, at *6 (C.D. Cal. Jan. 18, 2024). Though the plaintiffs argued that this provision was substantively unconscionable because it "[had] the potential to severely delay arbitration of an individual's rights by only permitting similar claims to proceed in batches," the court disagreed, finding that the protocol simply created a "system to adjudicate a group of cases with the purpose of facilitating global or widespread resolution via ADR." *Id.* (citation omitted). Similarly, in *Tercero v. Sacramento Logistics LLC*, the court considered a mass arbitration protocol that contemplated selection of "between five and ten 'test cases' to be arbitrated on an expedited basis." No. 24-cv-00953, 2025 WL 43125, at *9 (E.D. Cal. Jan. 7, 2025). The court held that this procedure was not unconscionable because it contained a tolling provision and did not bar claimants from filing their claims within the limitations period. *Id.*

Humble Bundle's mass arbitration protocol is also easily distinguishable from the provision held to be unconscionable in *Heckman v. Live Nation Entertainment, Inc.*, which the Ninth Circuit described as "so dense, convoluted, and internally contradictory to be borderline unintelligible." 120 F.4th 670, 683 (9th Cir. 2024). There, the court focused on several factors, none of which are present here.

*First*, despite promising "individual arbitration" that would not involve "any purported class or representative proceeding," the provision in *Heckman* in fact required cases with common issues or facts to be batched, with three bellwether cases to become "precedent" on all common issues in the batched cases as well as "any later-filed cases added to the batch." *Id.* at 678, 683. Decisions in

the bellwether cases would thus be binding on non-bellwether plaintiffs "who had no chance to participate in the arbitration and who are ignorant of the decision until it is invoked against them." *Id.* at 679. Here, by contrast, Humble Bundle's protocol does not contemplate batching with precedential effect but instead makes clear that "any arbitration under this Agreement will take place on an *individual* basis" and provides a mechanism by which *all* cases may be individually heard in stages. Ex. B at 13 (emphasis added); *see also Pilon v. Discovery Commc'ns, LLC*, No. 24-CV-4760, 2025 WL 752244, at *12 (S.D.N.Y. Mar. 10, 2025) (holding that NAM Rules were not substantively unconscionable, and explaining that "the mass-filing procedure at issue in *Heckman*—and, correspondingly, the unconscionable aspects of it—are not present" because "bellwether" arbitrations do not "have binding precedential effect on subsequent arbitrations").

*Second*, the provision in *Heckman* imposed significant procedural obstacles that are not present here. *See* 120 F.4th at 679, 685 (noting that the provision did not provide any right to discovery, imposed significant limitations on evidence and briefing, and included an asymmetrical appeal provision). Humble Bundle's arbitration provision, by contrast, adopts the NAM Rules and does not contain such limitations. Ex. B at 15. Unlike the "newly created entity, New Era ADR" at issue in *Heckman*, 120 F.4th at 676, NAM is a well-established and well-regarded provider. Its rules are neither "overly harsh" nor "one-sided," 120 F.4th at 6783, and they do not impose any asymmetrical limitations on discovery, briefing, or appeals. *See Pilon*, 2025 WL 752244, at *12 (explaining that the "restrictions on discovery and briefing allowed under the mass-filing provisions" at issue in Heckman "are not implicated by NAM").

*Third*, unlike in *Heckman*, where it was undisputed that the rules for selecting an arbitrator gave the defendant absolute discretion in overriding a claimant's decision to disqualify an arbitrator, 120 F.4th at 687, the NAM Rules allow both parties to challenge the nomination of an arbitrator where there is any concern regarding "impartiality or independence." *Id.* at Rule No. 23.

In short, Humble Bundle's arbitration provision bears no similarities to the provision before the court in *Heckman*, and Plaintiffs cannot credibly claim that it is unconscionable.

## IV. CONCLUSION

Because Plaintiffs each agreed to arbitrate this dispute, Humble Bundle respectfully requests that the Court compel arbitration and stay the action.

DATED: June 20, 2025

**PERKINS COIE LLP**

By: *James G. Snell*
James G. Snell (Bar No. 17307)
Lauren J. Tsuji (Bar No. 300155)
Anna Thompson-Lanners (*Pro Hac Vice*)

*Attorneys for Defendant Humble Bundle, Inc.*