Robert R. Jimenez (Fla. Bar No. 72020)
*Pro Hac Vice*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
201 Sevilla Ave., Suite 200
Coral Gables, Florida 33134
Telephone: (866) 252-0878
Facsimile: (865) 522-0049
rjimenez@milberg.com
ajaramillo@milberg.com

*Attorney for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| DAVID WRAY, JAMAHL FARRINGTON, MATTHEW BURROW, and NIKOLAS PULLEN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HUMBLE BUNDLE, INC.,<br><br>Defendant. | Case No. 3:25-cv-01592<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT HUMBLE BUNDLE, INC.'S MOTION TO COMPEL ARBITRATION**<br><br>Hearing Date: Sept. 26, 2025<br>Time: 2:00 p.m.<br>Location: Courtroom 9, 19th Floor<br>Judge: Hon. Trina L. Thompson |

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1

A. Background. ..... 1

B. Humble Bundle's Arbitration Agreement and NAM's Rules. ..... 2

1. Staging. ..... 2

2. Class Action Waiver. ..... 3

3. NAM. ..... 3

II. RESPONSE IN OPPOSITION ..... 4

A. Legal Standard. ..... 4

B. Argument. ..... 4

1. The initial 10 pages of Humble Bundle's Motion are largely irrelevant. ..... 4

2. There is no delegation clause, and if there were, it would be unconscionable. ..... 5

a. There is no express delegation clause. ..... 5

b. There is no incorporation of NAM rules into the agreement. ..... 7

c. If there is a delegation clause, it is unconscionable. ..... 10

(i) The delegation clause would be procedurally unconscionable. ..... 11

(ii) The delegation clause would be substantively unconscionable. ..... 12

3. The arbitration agreement is unconscionable. ..... 14

III. CONCLUSION ..... 15

## TABLE OF AUTHORITIES

Cases Page(s)

*Aggarwal v. Coinbase, Inc.*,
685 F. Supp. 3d 867 (N.D. Cal. 2023) ........ 7

*Ajamian v.* CantorCO2e, L.P.,
137 Cal. Rptr. 3d 773 (Ct. App. 2012) ........ 7, 10

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ........ 4

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) ........ 4

*Eiess v. USAA Fed. Sav. Bank*,
404 F. Supp. 3d 1240 (N.D. Cal. 2019) ........ 8

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995) ........ 6, 7

*Gostev v. Skillz Platform, Inc.*,
305 Cal. Rptr. 3d 248 (Ct. App. 2023) ........ 5, 7, 8

*Heckman v. Live Nation Entertainment, Inc.*,
120 F.4th 670 (9th Cir. 2024) ........ 4, 10, 11, 12, 13, 14, 15

*Ingalls v. Spotify USA, Inc.*,
2016 WL 6679561 (N.D. Cal. Nov. 14, 2016) ........ 8

*Kohler v. Whaleco, Inc.*,
757 F. Supp. 3d 1112 (S.D. Cal. 2024) ........ 6

*MacCleland v. Cellco Partnership*,
609 F.Supp.3d 1024 (N.D. Cal. July 1, 2022) ........ 3, 5, 8, 14, 15

*Magill v. Wells Fargo Bank, N.A.*,
2021 WL 6199649 (N.D. Cal. June 25, 2021) ........ 8

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ........ 5

*Pandolfi v. AviaGames, Inc.*,
2024 WL 4051754 (N.D. Cal. Sept. 4, 2024) ........ 15

*Rent-A-Ctr., W., Inc. v. Jackson*,
561 U.S. 63, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010) ........ 5

*Sandoval-Ryan v. Oleander Holdings LLC*,
272 Cal. Rptr. 3d 314 (Ct. App. 2020) ........ 5, 6

*Szetla v. Discovery Bank*,
97 Cal.App.4th 1094, 118 Cal. Rptr. 2d 862 (2002) ........ 12

Statutes

9 U.S.C. § 2 ........ 4

9 U.S.C. § 5 ........ 9

18 U.S.C. § 2710 ........ 1

**MEMORANDUM**

Plaintiffs David Wray, Jamahl Farrington, Matthew Burrow, and Nikolas Pullen (collectively, "Plaintiffs") hereby respond to the Motion to Compel Arbitration ("Motion" or "Motion to Compel") (ECF No. 32) filed by Defendant Humble Bundle, Inc. ("Humble Bundle"), and state as follows:

## I. INTRODUCTION

### A. Background.

The instant case is an action under the Video Privacy Protection Act, 18 U.S.C. § 2710, *et seq*. ("VPPA"), brought by Plaintiffs, individually and on behalf of all persons similarly situated. Plaintiffs are registered users of Humble Bundle's website, where they have purchased video games. The matter revolves around Humble Bundle's illegal transfer of personally identifiable information and video history to Facebook through the tracking technology known as the Meta Pixel.

Humble Bundle's Motion to Compel presents only two core issues of any legal significance, and both of Humble Bundle's arguments on same fail as a matter of law. Those issues are whether the parties delegated the question of the arbitration agreement's enforceability to the arbitrator (Mot. at pg. 10, § 3 (C)), and whether the arbitration agreement is unconscionable as a matter of law (Mot. at pg. 13, § 3 (D)). The rest of Humble Bundle's Motion to Compel – the initial ten pages of the Motion – is full of factual and legal points irrelevant for determination of the only salient questions at bar. As discussed *infra*, the Parties did not delegate enforceability to the arbitrator, the delegation provision would be unconscionable even if they had, and the arbitration agreement at issue is both substantively and procedurally unconscionable.

**B. Humble Bundle's Arbitration Agreement and NAM's Rules.**

**1. Staging.**

The arbitration agreement at issue in this case (attached to Humble Bundle's Motion at ECF No. 32-1) contains a staged mass filing provision purposefully designed to dramatically slow the prosecution of arbitrations. As outlined in the applicable clause, in the event that 25 or more Humble Bundle users initiate arbitration proceedings against Humble Bundle raising similar claims and utilizing the same counsel, a "mass-filing" provision is triggered. This requires that claims be addressed in a staged process rather than allowing all claims to proceed simultaneously, capping the number of claims against Humble Bundle that can proceed at one time. Indeed the staging provision specifically states that "[a]ny remaining claims shall not be filed or deemed filed in arbitration…" In the first stage of the process, each side selects 25 claims (50 total) to be arbitrated. The subsequent claims will only proceed after resolving the initial claims, following the same process. The arbitration agreement further mandates a global mediation session after the first and second rounds of arbitration to resolve the remaining claims. Any unresolved claims are adjudicated in rounds of 100 total claims in Stage 2, 200 total claims in Stage Three, and then groups of 100 total claims until fully resolved in Stage 4.

It must be noted that although Plaintiffs have filed this case on behalf of an unknown number of claimants, the law firm representing Plaintiffs has separately retained more than 4,500 individuals seeking redress from Humble Bundle for VPPA violations. Humble Bundle knows this as it has been served by undersigned counsel with a significant number of notice letters pertaining to these claims. Under the arbitration provision's staging process, and assuming one year for the completion of each stage (reasonable to anyone experienced in arbitrations, especially given that each stage mandates a minimum of fifty arbitrations and as many as two hundred at a time), the aforementioned group of approximately 4,500 individuals **would be estimated to complete their**

**arbitrations in approximately 45 years, in the year 2070**. To put this absurdity in context, NASA's target for human habitation of the Moon – the Project Base Camp facilitated by the currently-planned Artemis missions – is the 2030s, decades before Humble Bundle's arbitration provision would allow for these arbitrations to resolve. The situation is analogous to another case decided in this District, *MacCleland v. Cellco Partnership*, 609 F.Supp.3d 1024, 1040 (N.D. Cal. July 1, 2022), where staging under a similar mass arbitration provision delayed resolution of known claims by 157 years, to the year 2179, and was held to be unconscionable.

**2. <u>Class Action Waiver.</u>**

Humble Bundle's arbitration provision also includes a class action waiver that prevents users from participating in any class, collective, or representative actions in court or arbitration. This provision stipulates that users must only bring claims against Humble Bundle in an individual capacity, even if their claims are similar to those of other users. It further precludes users from joining their claims with those of others or serving as a class representative. The waiver applies broadly, covering claims arising out of any aspect of a consumer's relationship with Humble Bundle. Moreover, according to the arbitration provision at issue, the class action waiver survives the termination of the agreement, extending its reach beyond the life of the contract itself.

**3. <u>NAM.</u>**

Humble Bundle's arbitration agreement states that arbitration is to be governed by applicable rules of National Arbitration & Mediation ("NAM"). As discussed *infra*, NAM's rules are attached herein as **EXHIBIT A** to undersigned counsel's declaration and do not provide a right to discovery or an appeal of arbitrator rulings. These rules, along with other provisions of the arbitration agreement, render same unconscionable on both a procedural and substantive basis.

## II. RESPONSE IN OPPOSITION

### A. Legal Standard.

In ruling on a motion to compel arbitration, a district court must decide "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "In determining whether a valid arbitration agreement exists, federal courts 'apply ordinary state-law principles that govern formation of contracts.'" *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670, 681 (9th Cir. 2024) (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014)). "Under the [Federal Arbitration Act], a court may declare an arbitration agreement unenforceable 'upon such grounds as exist at law or in equity for the revocation of any contract,' and may invalidate an arbitration agreement by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Id.* (citing 9 U.S.C. § 2 and *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)).

### B. Argument.

#### 1. <u>The initial 10 pages of Humble Bundle's Motion are largely irrelevant.</u>

Humble Bundle begins its Motion by outlining the existence of the arbitration provision in its Terms of Service, explaining that Plaintiffs agreed to said terms at the time they signed up for their user accounts or made purchases on Humble Bundle's website. Humble Bundle then points to the arbitration provision, arguing that Plaintiffs agreed to same, that they had conspicuous notice of the arbitration terms, and that in filing the instant case they ignored the agreement. None of Humble Bundle's contentions address whether the arbitration agreement is itself enforceable as a matter of law, rendering entire sections of Humble Bundle's Motion irrelevant. The litany of cases cited by Humble Bundle for the proposition that a valid arbitration agreement exists focus not on the unconscionability issues present here, but rather, on the adequacy of notice in matters involving

clickwrap and sign-in agreements. Mot. at pg. 7-8. Again, this material is irrelevant and fails to support the enforceability of the arbitration agreement at issue. Plaintiffs do not deny the existence of the arbitration agreement, nor that *if* the arbitration provision were valid, their VPPA claims would be subject to arbitration. Plaintiffs' position is that the agreement is invalid because it is both procedurally and substantively unconscionable, as discussed *infra*.

**2. <u>There is no delegation clause, and if there were, it would be unconscionable.</u>**

Humble Bundle argues that enforceability of the arbitration agreement has been delegated to the arbitrator through language in the agreement and through alleged "incorporation" of NAM's rules. Mot. at pgs. 10-12. Neither standpoint holds water.

**a. There is no express delegation clause.**

"In general, 'whether the court or the arbitrator decides arbitrability is 'an issue for judicial determination unless the parties clearly and unmistakably provide otherwise.''" *MacClelland v. Cellco Partnership*, 609 F.Supp.3d 1024, 1031 (N.D. Cal. July 1, 2022). "Courts presume that the parties intend *courts*, not arbitrators, to decide threshold issues of arbitrability." *See Sandoval-Ryan v. Oleander Holdings LLC*, 272 Cal. Rptr. 3d 314, 319 (Ct. App. 2020) (emphasis in original). As such, courts apply the "clear and unmistakable" test that requires a "a heightened standard of proof that reverses the typical presumption in favor of the arbitration of disputes." *Id*. *See also*, *Gostev v. Skillz Platform, Inc.*, 305 Cal. Rptr. 3d 248, 256 (Ct. App. 2023). "There is no presumption in favor of arbitration of arbitrability." *MacClelland*, 609 F.Supp.3d at 1031 (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 69 n.1, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010) (explaining that unless the parties clearly and unmistakably provide otherwise, the gateway question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator)). "Courts, therefore, 'apply a more rigorous standard' when determining whether arbitrability is a matter for the arbitrator pursuant to a delegation clause." *MacClelland*, 609 F. Supp.3d at 1031. "Where the agreement is

silent or ambiguous on the question of who decides threshold arbitrability questions, the court and not the arbitrator should decide arbitrability so as not to force unwilling parties to arbitrate a matter they reasonably thought a judge, not an arbitrator, would decide." *Sandoval-Ryan*, 272 Cal. Rptr. 3d at 319. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995) (stating "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is "clea[r] and unmistakabl[e]" evidence that they did so.")

Humble Bundle's first argument on delegation is that verbiage in the arbitration agreement calls for only the arbitrator to decide enforceability. The language Humble Bundle cites is on pg. 15 of the Terms of Service (pg. 25 of ECF No. 32-1), which states that "[a]ll issues are for the arbitrator to decide, except as otherwise expressly provided herein." That the arbitrator may decide issues of enforceability of the arbitration agreement is <u>not</u> expressly stated anywhere in the document, leading to Humble Bundle's stretched interpretation of generic verbiage. Plainly, the arbitration agreement's language fails to clearly and unmistakably assign questions of enforceability to an arbitrator, despite Humble Bundle's suggestion in the Motion. In the absence of a sufficient delegation clause, a court retains authority to decide whether an arbitration agreement is unconscionable. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995).

At best, the language of Humble Bundle's arbitration agreement is ambiguous as to who decides enforceability, but the straightforward interpretation is that a court, not the arbitrator, decides the question. The language, located within a section outlining arbitration procedures *after* arbitration has commenced, does not identify who decides gateway issues. In contrast, delegation clauses upheld by courts <u>explicitly</u> assign interpretation, scope, and enforceability of the arbitration agreement to the arbitrator. *See Kohler v. Whaleco, Inc.*, 757 F. Supp. 3d 1112, 1125 (S.D. Cal. 2024) ("[t]he arbitrator shall have exclusive authority to resolve any…disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the

enforceability, revocability, scope, or validity of the Arbitration Agreement…"); *Aggarwal v. Coinbase, Inc.*, 685 F. Supp. 3d 867, 873–74 (N.D. Cal. 2023) ("The arbitrator shall have exclusive authority to resolve any…disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement…"). Indeed, one court, considering a provision similar to that here and an argument identical to Humble Bundle's, provides an apt insight:

> It is true that one reasonable inference from this language is that the parties, in designating arbitration as the exclusive means for determining '*[a]ny* disputes, differences or controversies' (and precluding court actions and providing a defense to them on this ground) intended that even threshold issues of unconscionability would be decided by the arbitration panel. But another reasonable inference is that all of this language is only intended to bring within the exclusive scope of arbitration all *substantive* disputes, claims or controversies on which a court action might otherwise be brought, while the *enforceability* of the arbitration provision itself remains a matter for determination by a court. **Indeed, because that is the usual expectancy of the parties, the absence of any express language pertaining to threshold enforceability questions either reinforces that proposition or at least fails to cure the ambiguity. In light of the possibility of these two conflicting inferences, the language fails to meet the test of *clear and unmistakable* evidence**.

*Gostev*, 305 Cal. Rptr. 3d at 257 (quoting *Ajamian v.* CantorCO2e, L.P., 137 Cal. Rptr. 3d 773, 786 (Ct. App. 2012)) (bold emphasis supplied; italics in original). Again, Humble Bundle's terms do not include explicit language, and courts have found that similarly vague and overly broad clauses fail the "clear and unmistakable" test. *See Ajamian v. CantorCO2e, L.P.*, 137 Cal. Rptr. 3d 773, 786 (Ct. App. 2012); *Gostev*, 305 Cal. Rptr. 3d at 258 (Ct. App. 2023). As such, the court should decide enforceability of the arbitration agreement in this case. *See First Options*, 514 U.S. at 943.

**b. There is no incorporation of NAM rules into the agreement.**

Humble Bundle's second argument on delegation is that the arbitration agreement "expressly incorporates" the NAM rules, including one (Rule No. 17(B)) that purports to allow NAM arbitrators to decide enforceability of an arbitration agreement. Mot. at pg. 12. However, the

arbitration agreement fails to incorporate NAM rules and instead presupposes that NAM may not be the arbitration forum at all.

The incorporation of an arbitration tribunal's rules must ensure that the parties' intent to delegate gateway questions of arbitrability be clear and unmistakable. *Gostev,* 305 Cal. Rptr. 3d at 256. Additionally – and instantly fatal to Humble Bundle's argument given that Plaintiffs are lay consumers – "[w]here at least one party is unsophisticated, courts in [the Northern District of California] and elsewhere have routinely found that the incorporation of … [arbitration rules] … is insufficient to establish a clear and unmistakable agreement to arbitrate arbitrability. *MacClelland*, 609 F.Supp.3d at 1031 (citing *Magill v. Wells Fargo Bank, N.A.*, No. 4:21-cv-01877-YGR, 2021 WL 6199649, at *5 (N.D. Cal. June 25, 2021) (holding that incorporation of the AAA rules does not clearly and unmistakably establish an agreement to delegate questions of arbitrability where one party was unsophisticated)). *See also*, *Ingalls v. Spotify USA, Inc.*, No. 16-cv-03533-WHA, 2016 WL 6679561, at *3–4 (N.D. Cal. Nov. 14, 2016) (denying motion to compel arbitration, holding that two ordinary consumers could not be expected to appreciate the significance of incorporation, and noting that "every district court decision in our circuit to address the question since *Brennan* [*v. Opus Bank*] has held that incorporation of the AAA rules was insufficient to establish delegability in consumer contracts involving at least one unsophisticated party"); *Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1253 (N.D. Cal. 2019) (noting that "[f]or an unsophisticated plaintiff to discover she had agreed to delegate gateway questions of arbitrability, she would need to locate the arbitration rules at issue, find and read the relevant rules governing delegation, and then understand the importance of a specific rule granting the arbitrator jurisdiction over questions of validity – a question the Supreme Court itself has deemed 'rather arcane'").

Overlooking that delegation through incorporation fails as a matter of law because Plaintiffs qualify as unsophisticated and the agreement relates to consumers, the notion that NAM's rules are

incorporated into Humble Bundle's Terms of Service is nonsensical. While the arbitration provision states that "[t]he arbitration will be governed by the applicable rules of National Arbitration & Mediation," this vague reference does not specify whether those rules apply to threshold arbitrability issues, nor does this verbiage actually "incorporate" NAM's rules merely by identifying what rules would govern a future arbitration. *See* ECF No. 32-1, § 10(h)(iii). On its face, this language could suggest that NAM rules only govern arbitrations pending before it and nothing more. Moreover, there can be no incorporation of NAM rules into the arbitration agreement because the same provision identifying NAM <u>also</u> supposes that arbitration can be conducted by other arbitration providers, stating "[i]f NAM is unavailable or unwilling to do so, another arbitration provider shall be selected by the parties that will do so, or if the parties are unable to agree on an alternative administrator, by the court pursuant to 9 U.S.C. § 5." Indeed, NAM's own rules state that "it is within NAM's sole discretion to accept or reject any case for administration," *see* **Exhibit A** to undersigned counsel's attached declaration (NAM Comprehensive Rules, Rule No. 1), and NAM reserves the right to modify its rules at any time without prior written notice to the parties. *Id.* at Rule No. 8 ("NAM reserves the right to modify these Rules at any time without prior written notice to the parties."). As such, the listing of NAM's rules in the arbitration agreement cannot serve as incorporation of same into the arbitration agreement given that the provision contemplates arbitration providers that are <u>not</u> NAM, there is no way to know before the initiation of arbitration whether NAM or its arbitrators can or will agree to serve as forum, and NAM is free at any time to change its rules and their content. It is theoretically possible for NAM itself to be out of business at the time arbitrations are initiated, or for NAM to refuse to take on more cases because of its caseload, or for Rule No. 17(B) (relied upon by Humble Bundle) to change on a whim. None of this speaks to the clear and unmistakable intention necessary to find delegation of enforceability.

Given the above, it is apparent that the plain language of the agreement does not clearly indicate that the parties agreed to the delegation of arbitrability through the incorporation of NAM rules, nor could they given that Plaintiffs are lay consumers. As the court in *Ajamian* explained, "[t]here are many reasons for stating that the arbitration will proceed by particular rules, and doing so does not indicate that the parties' motivation was to announce who would decide threshold issues of enforceability." *Ajamian*, 137 Cal. Rptr. 3d at 789. Humble Bundle's terms thus fail to delegate questions of arbitrability to an arbitrator either through a delegation clause or through the incorporation of NAM rules. This failure to delegate permits this court to decide the question of unconscionability as it relates to Humble Bundle's arbitration agreement.

**c. If there is a delegation clause, it is unconscionable.**

Even in the unlikely scenario that Humble Bundle is correct and there is a delegation clause in the arbitration agreement (again, there is not), such a clause would be unconscionable as a matter of law. "To demonstrate unconscionability of Defendants' delegation clause under California law, Plaintiffs must show that the clause is both procedurally and substantively unconscionable." *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670, 681 (9th Cir. 2024). "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* Moreover, "[i]n deciding whether a delegation clause is unenforceable, [a court's] analysis is not limited to the bare text of the clause." *Heckman*, 120 F.4th at 680. "A party is … permitted … to challenge the enforceability of a delegation clause by explaining how 'unrelated' provisions make the delegation unconscionable.'" *Id.* at 680-681.

As discussed *infra*, the verbiage that Humble Bundle alleges is the delegation clause (if it even is one) fails because same is both procedurally and substantively unconscionable.

### *i. The delegation clause would be procedurally unconscionable.*

"Unconscionability analysis begins with an inquiry into whether the contract is one of adhesion." *Heckman*, 120 F. 4th at 681. "In deciding procedural unconscionability, California courts 'focus[] on the factors of oppression and surprise.'" *Id.* at 682. "The elements of oppression and surprise are 'satisfied by a finding that the arbitration provision was presented on a take-it-or-leave-it basis and that it was oppressive due to 'an inequality of bargaining power that result[ed] in no real negotiation and an absence of meaningful choice.''" *Id.* "Some California courts have held that in itself '[a] finding of a contract of adhesion is essentially a finding of procedural unconscionability.'" *Heckman*, 120 F. 4th at 681.

In this case, Humble Bundle's delegation clause is procedurally unconscionable because the contract is one of adhesion. Neither Plaintiffs nor other users could possibly negotiate Humble Bundle's Terms of Service, especially given that, as explained below, the Terms apply even at the moment of browsing Humble Bundle's website (before a consumer can even read them). Additionally, as with the arbitration provision struck down in *Heckman*, Humble Bundle's arbitration provision allows for immediate changes without notice. The Terms of Service cannot be more straightforward on this point, stating "[w]e may, without prior notice, change the Service." *See* ECF No. 32-1 at pg. 12. Indeed, the modification provision found later in Humble Bundle's Terms of Service states as follows:

> (a) Changes. Humble Bundle reserves the right, at any time and from time to time, to update, revise, supplement, and otherwise modify these Terms and to impose new or additional rules, policies, terms, or conditions on your use of the Services or Products.
> …
>
> You understand and agree that you will be deemed to have accepted the amended Terms if you use the Service after any such change.

ECF No. 32-1 at § 10 (on pg. 21 of the filing). Humble Bundle's Terms of Service define "the Service" broadly, encompassing the mere browsing of the company's website. "Under California

law, 'oppression is even more onerous' when a 'clause pegs both the scope and procedure of the arbitration to rules which might change.'" *Heckman*, 120 F.4th at 682. As in *Heckman*, "[e]ven standing alone, this provision is procedurally unconscionable under California law." *Id.* at 683. *See also*, *Szetla v. Discovery Bank*, 97 Cal.App.4th 1094, 118 Cal. Rptr. 2d 862, 867 (2002) (holding that a take-it-or-leave-it amendment to terms "establishe[d] the necessary element of procedural unconscionability"). As such, the delegation clause is procedurally unconscionable.

***ii. The delegation clause would be substantively unconscionable.***

"Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *Heckman*, 120 F.4th at 683. "When there is 'substantial procedural unconscionability … even a relatively low degree of substantive unconscionability may suffice to render the agreement unenforceable." *Id.* As explained *supra*, "[i]n deciding whether a delegation clause is unenforceable, [a court's] analysis is not limited to the bare text of the clause." *Heckman*, 120 F.4th at 680. "A party is … permitted … to challenge the enforceability of a delegation clause by explaining how 'unrelated' provisions make the delegation unconscionable.'" *Id.* at 680-681.

In this case, the supposed delegation clause in Humble Bundle's Terms of Service is substantively unconscionable because there is no actual right to discovery at arbitration and there is no right to appeal NAM decisions. This is analogous to the facts of *Heckman* and the delegation clause struck down in that case. There, the 9th Circuit reviewed the arbitration provider's rules on discovery, noting that same were "inadequate vehicles for the vindication of plaintiffs' claims," *Id.* at 685, in part because there was no right to discovery. The same is true here. NAM's rules do <u>not</u> actually confer a right to discovery, as the text of Rule No. 18(A) makes clear:

> The parties shall conduct discovery on a **voluntary basis**, the procedure of which shall be **agreed to by the parties**. Failing such agreement, the Arbitrator(s) shall have the power to order such discovery, by way of document production, interrogatory, deposition, or

> otherwise, **as the Arbitrator(s) considers necessary** for a full and fair exploration of the issues in dispute.

*See* **EXHIBIT A** to undersigned counsel's attached declaration (emphasis added). The afore-cited rule requires agreement of parties – agreement which is squarely not in Humble Bundle's own interests as it is not beneficial for the company to produce evidence of its own culpability. In the absence of Humble Bundle's willingness – which cannot, despite any averments before arbitration, be guaranteed – the arbitrator would decide if discovery is necessary. Given that both Humble Bundle and the arbitrator would have discretion in deciding whether to allow for claimants to conduct discovery, there is *by definition* no actual right to discovery under NAM's rules or Humble Bundle's arbitration agreement. This renders the delegation clause unconscionable because "[d]iscovery is often necessary to decide threshold issues such as the validity of the delegation clause," *Heckman*, 120 F.4th at 685, and "[t]he denial of adequate discovery in arbitration proceedings leads to the de facto frustration of statutory rights." *Id.*

Adding to the substantive unconscionability of the supposed delegation clause is the lack of a right to appeal. Under the NAM rules, "[i]f the parties mutually agree in writing to provide for an appeal process with respect to the arbitration, such appeal would then be subject to NAM's Appellate Dispute Resolution Rules and Procedures." However, there is nothing in the arbitration agreement about appeals of NAM decisions, and NAM's rules do not provide for an actual right to appeal. It is thus clear that, as it relates to both discovery and appeals, NAM's rules are ineffectual and rely on the party with superior bargaining position and resources – respondent defendants like Humble Bundle and other companies – to act contrary to their own interests. NAM's rules are a smokescreen that provide only the illusion of a fair process, and to be frank, it is no coincidence that Humble Bundle cites the one NAM rule it believes favors it but conspicuously fails to provide the entire rule set to the Court. The 9th Circuit's criticism in *Heckman* is appropriate here: if terms

of service and arbitrator rules prohibit appeal of arbitrator decisions, including a "decision under the delegation clause that the parties' dispute is arbitrable," a delegation clause is substantively unconscionable as a matter of law. *Heckman*, 120 F.4th at 687.

Plainly, as in *Heckman*, the "procedural and substantive unconscionability is fatal to the delegation clause." *Id.* In its motion, Humble Bundle attempts to distinguish *Heckman* because the unconscionability of the arbitration provision there and the rules of the arbitration provider, New Era, were seemingly more flagrantly unconscionable. Such an argument is unavailing because the extremity of the clauses and rules at issue in *Heckman* do not set a minimal threshold for unconscionability. Again, Plaintiffs do not believe there is a delegation clause in the corresponding arbitration agreement, but if there were, it would not (or does not) survive the analysis, even if the facts are less extreme than those struck down by the 9th Circuit in *Heckman*.

**3. The arbitration agreement is unconscionable.**

The provisions of the arbitration agreement and NAM rules that would render the supposed delegation clause unconscionable similarly render the underlying arbitration agreement unconscionable, both procedurally and substantively. Additionally, the staging process and the absurdly long delay in resolving the batch of claims known to exist (the approximately 4,500 claims in addition to those of Plaintiffs) – as well as other, unknown claims of class members – make the unconscionability at play obvious. Staging prevents arbitrations for known claims from concluding for approximately 45 years, to the year 2070. In its Motion, Humble Bundle argues that the arbitration agreement is not unconscionable because the VPPA's two-year statute of limitations would be tolled during the staging of arbitrations before NAM. Mot. at pg. 14. Humble Bundle neglects, of course, to mention the absurdly long multi-decade period for resolution of claims it has already been informed of, which on its own renders the arbitration agreement unconscionable. *See MacCleland*, 609 F.Supp.3d at 1040 (mass arbitration staging provision delaying resolution of

known cases by 157 years was substantively unconscionable). As noted in *MacCleland*, "[d]elaying the ability of one to vindicate a legal claim by years, possibly *156 years*, 'conflict[s] with one of the basic principles of our legal system—justice delayed is justice denied.'" *Id.* at 1041 (emphasis in original).

Additionally, Humble Bundle's arbitration agreement is procedurally unconscionable as a non-negotiable contract of adhesion, and it is substantively unconscionable due to its unreasonable delays and restrictions on consumers' ability to pursue claims collectively. Furthermore, the mass arbitration provision in the agreement forces claimants to make an unfair choice: they must either forgo their right to choose experienced counsel or face extended delays due to the staged arbitration process. As discussed *supra*, the mass arbitration provision is triggered when 25 or more claims are asserted by the same or coordinated counsel. To avoid the mass arbitration provision, users would have to find different attorneys, impacting the right to counsel of their choice or, indeed, the ability to find any counsel at all. This is because where individual claims are small (as consumer claims often are), it may be difficult to find an attorney who represents only a single or small number of similarly situated clients. *Pandolfi v. AviaGames, Inc.*, No. 23-CV-05971-EMC, 2024 WL 4051754, at *6 (N.D. Cal. Sept. 4, 2024).

## III. CONCLUSION

Humble Bundle's arbitration agreement unfairly limits consumers' access to legal remedies so as to represent a "systematic effort to impose arbitration as an inferior forum" designed to operate to Humble Bundle's advantage. *Heckman*, 120 F.4th at 688. There is no delegation clause, and even if there was, it would qualify as both procedurally and substantively unconscionable, as the rest of the arbitration agreement does. The Court should deny Humble Bundle's Motion to Compel Arbitration.

Dated July 7, 2025.

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**

By: *Robert R. Jimenez*
Robert R. Jimenez, Fla. Bar No. 72020
*Pro Hac Vice*
Mark E. Silvey, Tenn. Bar No. 013415
*Pro Hac Vice*
Jordan Macejka, Fla. Bar No. 123599
*Pro Hac Vice*
Alex R. Straus, Bar No. 321366

*Attorneys for Plaintiffs*