**PERKINS COIE LLP**
James G. Snell (Bar No. 173070)
JSnell@perkinscoie.com
3150 Porter Drive
Palo Alto, California 94304-1212
Telephone: +1.650.838.4300
Facsimile:  +1.650.838.4350

Lauren J. Tsuji (Bar No. 300155)
LTsuji@perkinscoie.com
Anna Thompson-Lanners *(Pro Hac Vice)*
AThompsonLanners@perkinscoie.com
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Telephone: +1.206.359.8000
Facsimile:  +1.206.359.9000

*Attorneys for Defendant Humble Bundle, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID WRAY, JAMAHL FARRINGTON, MATTHEW BURROW, and NIKOLAS PULLEN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HUMBLE BUNDLE, INC.,<br><br>Defendant. | Case No. 3:25-cv-01592<br><br>**DEFENDANT HUMBLE BUNDLE, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION**<br><br>Date: September 16, 2025<br>Time: 2:00 p.m.<br>Location: Courtroom 9, 19th Floor<br>Judge: Hon. Trina L. Thompson |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................................ 1

II.     ARGUMENT .............................................................................................................. 1

        A.      Plaintiffs Concede That They Agreed to Arbitrate Their VPPA Claims .............. 1

        B.      The Parties Delegated Arbitrability to the Arbitrator ........................................... 2

                1.      The Terms contain an express delegation clause ....................................... 2

                2.      The Terms incorporate the NAM Rules ...................................................... 4

        C.      The Delegation Clause Is Not Unconscionable ..................................................... 7

                1.      Plaintiffs fail to identify any supposed unconscionability in the delegation clause specifically, as opposed to the arbitration agreement generally ................................................................................... 7

                2.      The delegation clause is not procedurally unconscionable ........................ 8

                        i.      Contracts of adhesion are not per se procedurally unconscionable, and Plaintiffs' agreement to the Terms was not unfair ........................................................................................ 8

                        ii.     The unilateral modification provision is not procedurally unconscionable .............................................................................. 9

                3.      The delegation clause is not substantively unconscionable ..................... 10

        D.      The Arbitration Agreement Is Not Unconscionable ............................................ 12

III.    CONCLUSION ......................................................................................................... 13

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aggarwal v. Coinbase, Inc.*,
 685 F. Supp. 3d 867 (N.D. Cal. 2023) .........................................................................................4

*Brennan v. Opus Bank*,
 796 F.3d 1125 (9th Cir. 2015).............................................................................................3, 5, 6

*Brooks v. WarnerMedia Direct, LLC*,
 No. 23-11030-KPF, 2024 WL 3330305 (S.D.N.Y. July 8, 2024) ...........................................13

*Caremark, LLC v. Chickasaw Nation*,
 43 F.4th 1021 (9th Cir. 2022).................................................................................................12

*Cavanaugh v. Fanatics, LLC*,
 738 F. Supp. 3d 1285 (E.D. Cal. 2024)......................................................................................3

*Caviani v. Mentor Graphics Corp.*,
 No. 19-cv-01645-EMC, 2019 WL 4470820 (N.D. Cal. Sept. 18, 2019) ...............................3, 5

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
 207 F.3d 1126 (9th Cir. 2000)..............................................................................................1, 2

*Donovan v. Coinbase Glob., Inc.*,
 649 F. Supp. 3d 946 (N.D. Cal. 2023) ...............................................................................4, 8, 9

*Fischer v. Kelly Servs. Glob., LLC*,
 No. 23-cv-1197-JLS, 2024 WL 382181 (S.D. Cal. Jan. 31, 2024)........................................3, 7

*Gerlach v. Tickmark, Inc.*,
 No. 21-cv-2768-YGR, 2021 WL 3191692 (N.D. Cal. July 28, 2021)......................................5

*Gonzalez v. Interstate Cleaning Corp.*,
 No. 19-07307-KAW, 2020 WL 1891789 (N.D. Cal. Apr. 16, 2020) .......................................9

*Heckman v. Live Nation Ent., Inc.*,
 120 F.4th at 682 ..............................................................................................................9, 10, 11

*Holley-Gallegly v. TA Operating, LLC*,
 74 F.4th 997 (9th Cir. 2023).......................................................................................................7

*In re BAM Trading Servs. Inc. Sec. Litig.*,
 733 F. Supp. 3d 854 (N.D. Cal. 2024) .......................................................................................6

**TABLE OF AUTHORITIES**

(continued)

**Page(s)**

*Kohler v. Whaleco, Inc.*,
  757 F. Supp. 3d 1112 (S.D. Cal. 2024) .................................................................................3, 4

*Lambrix v. Tesla, Inc.*,
  No. 23-cv-01145-TLT (N.D. Cal. Sept. 27, 2023), ECF No. 112 ...............................................3

*Lang v. Skytap, Inc.*,
  347 F. Supp. 3d 420 (N.D. Cal. 2018) ........................................................................10, 11, 13

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*,
  363 F.3d 1010 (9th Cir. 2004)....................................................................................................10

*MacClelland v. Cellco P'ship*,
  609 F. Supp. 3d 1024 (N.D. Cal. 2022) .....................................................................................12

*Marks v. Bridgestone Americas, Inc.*,
  No. 15-cv-05153-CAS, 2015 WL 13919149 (C.D. Cal. Nov. 16, 2015) ...................................11

*Martinez-Gonzalez v. Elkhorn Packing Co., LLC*,
  635 F. Supp. 3d 883 (N.D. Cal. 2022) .........................................................................................2

*McLellan v. Fitbit, Inc.*,
  No. 16-cv-00036-JD, 2017 WL 4551484 (N.D. Cal. Oct. 11, 2017).........................................5

*Miller v. Travel Guard Group Inc.*,
  No. 21-09751-VC, 2022 WL 2712507 (N.D. Cal. July 13, 2022).........................................2, 3

*Mohamed v. Uber Techs., Inc.*,
  848 F.3d 1201 (9th Cir. 2016) ...................................................................................................10

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
  724 F.3d 1069 (9th Cir. 2013)................................................................................................3, 4

*Patrick v. Running Warehouse, LLC*,
  93 F.4th 468 (9th Cir. 2024)................................................................................4, 5, 6, 9, 10

*Pierce v. Tesla*,
  No. 22-cv-03177-TLT (N.D. Cal. Jan. 30, 2023), ECF No. 29 .................................................8

*Poublon v. C.H. Robinson Co.*,
  846 F.3d 1251 (9th Cir. 2017)................................................................................................8, 11

*Rendon v. T-Mobile USA, Inc.*,
  747 F. Supp. 3d 1314 (C.D. Cal. 2024)......................................................................................12

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION

**TABLE OF AUTHORITIES**

(continued)

**Page(s)**

*Rent-A-Ctr., W., Inc. v. Jackson,*
    561 U.S. 63 (2010) ...........................................................................................................8

*Rojas v. Bosch Solar Energy Corp.,*
    386 F. Supp. 3d 1116 (N.D. Cal. 2019) .........................................................................9

*S.S. ex rel. by and through Stern v. Peloton Int., Inc.,*
    566 F. Supp. 3d 1019 (S.D. Cal. 2021) .........................................................................6

*Saperstein v. Thomas P. Gohagan & Co.,*
    476 F. Supp. 3d 965 (N.D. Cal. 2020) ......................................................................2, 7

*Serafin v. Balco Props. Ltd.,*
    235 Cal. App. 4th 165 (2015).........................................................................................7

*Sheppard v. Compass,*
    No. 22-cv-03237-TLT (N.D. Cal. Feb. 27, 2023), ECF No. 42 ...............................8, 11

*Singh v. Payward, Inc.,*
    No. 23-cv-01435-CRB, 2023 WL 5420943 (N.D. Cal. Aug. 22, 2023).........................5

*Tietsworth v. Sears,*
    720 F. Supp. 2d 1123 (N.D. Cal. 2010) .........................................................................9

*Tompkins v. 23andMe, Inc.,*
    840 F.3d 1016 (9th Cir. 2016)....................................................................................7, 11

**STATUTES**

9 U.S.C. §§ 1–16..................................................................................................................4

**RULES**

National Arbitration & Mediation Rules ..........................................................................4, 11

## I. INTRODUCTION

Plaintiffs David Wray, Jamahl Farrington, Matthew Burrow, and Nikolas Pullen do not dispute that they agreed to arbitrate their claims against Humble Bundle when they signed up for their accounts and purchased games on the website. Instead, Plaintiffs argue that the arbitration provision lacks a delegation clause or, alternatively, that the delegation clause—and the arbitration provision as a whole—are somehow "unconscionable." ECF No. 36 ("Opposition") at 4–5. Both arguments fail, and Plaintiffs should not be allowed to evade their agreement to arbitrate based on conclusory statements and far-fetched interpretations of the arbitration provision.

*First*, the Terms clearly and unmistakably delegate threshold questions of arbitrability to the arbitrator through both an express delegation clause and the incorporation of the applicable rules of the specified arbitration provider, National Arbitration and Mediation ("NAM").

*Second*, Plaintiffs fail to show any procedural or substantive unconscionability in the delegation clause or the arbitration agreement as a whole, and thus all threshold questions of arbitrability must be decided by the arbitrator as the parties intended (and such arbitrator will properly find Plaintiffs' claims arbitrable).

The Court should therefore compel arbitration and stay this action.

## II. ARGUMENT

### A. Plaintiffs Concede That They Agreed to Arbitrate Their VPPA Claims

Plaintiffs do not dispute that they agreed to the Terms, including the arbitration provision and delegation clause, nor do they dispute that their claims fall within the scope of the arbitration provision. *See* Opp. at 4–5. As Humble Bundle showed in its Motion, Plaintiffs each agreed to arbitrate the claims asserted here by affirmatively assenting to the Terms after receiving notice of and having the opportunity to review the agreement by selecting a conspicuous hyperlink. ECF No. 32 ("Mot.") at 9; *see also* ECF No. 32-01 ("Cheatham Decl.") Ex. A. While Plaintiffs dismiss this evidence as "irrelevant," they are plainly incorrect, as notice and assent are fundamental elements in determining whether there has been an agreement to arbitrate. *See, e.g.*, *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (discussing the elements required to

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION

establish arbitrability, including determining "whether a valid agreement to arbitrate exists"). Nevertheless, Plaintiffs' Opposition makes clear that this element is satisfied. Opp. at 5.

Plaintiffs also do not dispute that their claims fall within the arbitration provision, which extends to "all disputes and claims . . . except for claims arising from bodily injury or that pertain to enforcing, protecting, or the validity of . . . intellectual property rights." Mot. at 12; Cheatham Decl. Ex. B ("Ex. B") at 13.

As such, there can be no doubt that Plaintiffs agreed to arbitrate this dispute. *See Chiron*, 207 F.3d at 1130 ("The court's role under the [FAA] is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."); *Martinez-Gonzalez v. Elkhorn Packing Co., LLC*, 635 F. Supp. 3d 883, 890 (N.D. Cal. 2022) (same); *Saperstein v. Thomas P. Gohagan & Co.*, 476 F. Supp. 3d 965, 971–72 (N.D. Cal. 2020) (same).

## B. The Parties Delegated Arbitrability to the Arbitrator

Having entered into a valid arbitration agreement, Plaintiffs are bound to arbitrate their claims against Humble Bundle, including claims about arbitrability. Plaintiffs nevertheless devote a large portion of their Opposition to arguing that they did not agree to delegate disputes over the enforceability of the arbitration provision to the arbitrator. Opp. at 5–10. But they cannot overcome the clear and unmistakable delegation, which is evidenced both by the inclusion of an express delegation clause and the incorporation of the NAM Rules.

### 1. The Terms contain an express delegation clause

*First*, the Terms properly delegate threshold issues of arbitrability through an express delegation clause, which states that "*[a]ll issues* are for the arbitrator to decide, except as otherwise expressly provided herein." Ex. B at 15 (emphasis added). Plaintiffs try to depict this broad and unambiguous language as insufficient, but they do not offer any contrary interpretation as to its intended scope, nor do they identify any conflicting terms in the remainder of the agreement that would make the issue of delegation ambiguous. Opp. at 5–6. This is not surprising, as courts in this jurisdiction and others have interpreted nearly identical language as delegating the issue of arbitrability to the arbitrator. For example, in *Miller v. Travel Guard Group Inc.*, No. 21-cv-09751-

VC, 2022 WL 2712507 (N.D. Cal. July 13, 2022), Judge Chhabria considered an arbitration agreement that stated, "You and [company] agree that any and all Claims will be resolved by binding arbitration, rather than in court," and held that this language "clearly delegate[d] questions of arbitrability to the arbitrator." *Id.* at *1 (considering arbitration language in Mot. to Compel Arbitration, ECF No. 19). Other courts presented with similar language have likewise found that the parties delegated the question of arbitrability to the arbitrator. *See, e.g.*, *Cavanaugh v. Fanatics, LLC*, 738 F. Supp. 3d 1285, 1299 (E.D. Cal. 2024) (delegation clause included "broad language stating that 'any and all disputes, claims and causes of action'" would be "resolved exclusively by binding arbitration"); *Fischer v. Kelly Servs. Glob., LLC*, No. 23-cv-1197-JLS, 2024 WL 382181, at *1 (S.D. Cal. Jan. 31, 2024) (delegation clause stated that "the Parties agreed to use binding arbitration for any Covered Claims that might arise between them" (internal quotation marks omitted)); *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1071 (9th Cir. 2013) (delegation clause stated that "[a]ny dispute arising out of or relating to this [agreement] shall be . . . settled by arbitration as set out herein"); *see also* Order Granting Motion to Compel Arbitration at 4, 11, *Lambrix v. Tesla, Inc.*, No. 23-cv-01145-TLT (N.D. Cal. Sept. 27, 2023), ECF No. 112 (Thompson, J.) (delegation clause stated that "[a]ny dispute arising out of or relating to any aspect of the relationship between you and Tesla will not be decided by a judge or jury but instead by a single arbitrator in an arbitration").

In an attempt to suggest that more express language is required, Plaintiffs rely on a narrow selection of cases that do not support their overreaching position.[1] Plaintiffs first point to specific language that courts found sufficient for purposes of establishing delegation in *Kohler v. Whaleco,*

---

[1] Plaintiffs also cite non-binding state court cases. Opp. at 7. Here, however, Humble Bundle's Terms are governed by the FAA. Ex. B. at 13 ("This Agreement evidences a transaction in interstate commerce, and thus the Federal Arbitration Act (9 U.S.C. §§ 1–16) governs the interpretation and enforcement of this arbitration provision."). Thus, the determination of arbitrability is governed by federal, not state, law. *See, e.g.*, *Brennan v. Opus Bank*, 796 F.3d 1125, 1129 (9th Cir. 2015) ("[F]ederal law governs the arbitrability question by default because the [a]greement is covered by the FAA, and the parties have not clearly and unmistakably designated that nonfederal arbitrability law applies." (citation omitted)); *Caviani v. Mentor Graphics Corp.*, No. 19-cv-01645-EMC, 2019 WL 4470820, at *4 (N.D. Cal. Sept. 18, 2019) ("[W]hether there is a clear and unmistakable agreement to delegate the question of arbitrability to the arbitrator involves the application of the FAA and is a question of federal law.").

*Inc.*, 757 F. Supp. 3d 1112 (S.D. Cal. 2024) and *Aggarwal v. Coinbase, Inc.*, 685 F. Supp. 3d 867 (N.D. Cal. 2023). Opp. at 6–7. Both cases involved arbitration clauses delegating resolution of any "disputes arising out of or relat[ing] to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement" to the arbitrator. *Kohler*, 757 F. Supp. 3d at 1121; *Aggarwal*, 685 F. Supp. 3d at 873–74. But neither involved any finding that such language was *required*, or that anything less would be insufficient to establish delegation. *Kohler*, 757 F. Supp. 3d at 1126; *Aggarwal*, 685 F. Supp. 3d at 878. Rather, these cases simply observed that such language was sufficiently unambiguous.

## 2. The Terms incorporate the NAM Rules

*Second*, the Terms properly delegate threshold issues of arbitrability by incorporating the NAM Rules, which unambiguously give the arbitrator authority "to determine jurisdiction and arbitrability including, but not limited to, any issue regarding the validity, existence, formation, or scope of the agreement under which Arbitration is being sought, and the proper parties to the Arbitration." Mot. at 12 (quoting NAM Comprehensive Dispute Resolution Rules and Procedures, Rule No. 17(B)). Specifically, the Terms provide that "[t]he arbitration will be governed by applicable rules of National Arbitration & Mediation ('NAM') (including the Comprehensive Dispute Resolution Rules and Procedures and/or the Supplemental Rules for Mass Arbitration Filings, as applicable) ('NAM Rules'), as modified by this Arbitration Agreement, and will be administered by NAM. . . . The NAM Rules are available online at www.namadr.com, by calling NAM at 1-800-358-2550, or by requesting them in writing at the Notice Address." Ex. B at 14.

It is well established that incorporating arbitral forum rules into terms, as here, "constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Donovan v. Coinbase Glob., Inc.*, 649 F. Supp. 3d 946, 951 (N.D. Cal. 2023) (Thompson, J.) (citations omitted); *see also, e.g.*, *Oracle*, 724 F.3d at 1074 ("Virtually every circuit to have considered the issue has determined that incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."); *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 480–81 (9th Cir. 2024) ("Courts have found that parties clearly delegated arbitrability where they incorporated an arbitrator's arbitration rules

in the agreement. . . . Incorporation of the JAMS arbitration rules by reference constitutes clear and unmistakable evidence that the parties agree to arbitrate arbitrability."); *Caviani*, 2019 WL 4470820, at *4 ("When a signed arbitration agreement includes a reference to specific arbitration rules—e.g., AAA, JAMS, etc.—the Ninth Circuit has held that the parties agreed to delegate arbitrability itself to the arbitrator."). This is true even in the absence of an express delegation provision. *See, e.g.*, *Brennan*, 796 F.3d at 1129; *McLellan v. Fitbit, Inc.*, No. 16-cv-00036-JD, 2017 WL 4551484, at *2 (N.D. Cal. Oct. 11, 2017) ("*Brennan* teaches that incorporation, rather than an express statement, does not make an agreement to delegate arbitrability ineffective.").

In an effort to overcome this overwhelming precedent, Plaintiffs argue that (1) the incorporation of arbitration rules is insufficient where one party is unsophisticated and (2) the reference to the NAM Rules in the Terms serves merely to identify what rules would govern a future arbitration. Opp. at 8–9. These contentions get them nowhere.

As to their argument that they are unsophisticated and therefore excused from having agreed to delegate the question of arbitrability, many courts in this district and others have "concluded that incorporation of the AAA or JAMS rules is sufficient for a court to find . . . arbitrability, regardless of the parties' sophistication." *Singh v. Payward, Inc.*, No. 23-cv-01435, 2023 WL 5420943, at *7 (N.D. Cal. Aug. 22, 2023); *Gerlach v. Tickmark, Inc.*, No. 21-cv-2768-YGR, 2021 WL 3191692, at *4 (N.D. Cal. July 28, 2021) (noting that the "greater weight of authority" holds that incorporating arbitration rules is sufficient to delegate, "with no discussion of, or attention to, the parties' level of sophistication" (citations omitted)); *see also McLellan*, 2017 WL 4551484, at *3 ("The factors that might make someone 'sophisticated' are poorly suited to a standard definition that parties can rely upon to avoid uncertainty or surprise in the meaning of the instrument they signed. A party-by-party assessment of sophistication under some loose amalgam of personal education, line of work, professional knowledge, and so on would undermine contract expectations in potentially random and inconsistent ways. Applying such an individualized inquiry in the class action context would likely raise additional problems."). In fact, the Ninth Circuit explicitly contemplated that sophistication might be irrelevant to the analysis in *Brennan*, where it cautioned that its holding "should not be interpreted to require that the contracting parties be sophisticated . .

. before a court may conclude that incorporation of the AAA rules constitutes 'clear and unmistakable' evidence of the parties' intent. Thus, our holding does not foreclose the possibility that this rule could also apply to unsophisticated parties or to consumer contracts." 796 F.3d at 1130.

In any event, Plaintiffs offer "no evidence concerning their sophistication or lack thereof to the district court," so the Court need not reach or resolve this question to compel arbitration. *Patrick*, 93 F.4th at 481; *see also, e.g.*, *In re BAM Trading Servs. Inc. Sec. Litig.*, 733 F. Supp. 3d 854, 864 (N.D. Cal. 2024) ("Plaintiff must identify evidence that creates a dispute of fact as to sophistication, and Plaintiff has not done so here.").

As to their argument that the Terms do not in fact incorporate the NAM Rules, Plaintiffs are also wrong.[2] While Plaintiffs suggest that the Terms contain only a "vague reference" to the NAM Rules, that "does not specify whether those rules apply to threshold arbitrability issues," Opp. at 9, they fail to cite a single case suggesting that incorporation must take a specific form. Indeed, courts routinely find that arbitral forum rules are incorporated by reference—and thus questions of arbitrability are delegated to the arbitrator—where parties use language similar to that used in the Terms. *See, e.g.*, *S.S. ex rel. Stern v. Peloton Int., Inc.*, 566 F. Supp. 3d 1019, 1043 (S.D. Cal. 2021) (finding the parties had delegated arbitrability to the arbitrator when the terms provided that "[t]he arbitration will be conducted by the American Arbitration Association ('AAA') under its Consumer Arbitration Rules (the 'AAA Rules') then in effect, except as modified by these Terms"); *Patrick*, 93 F.4th at 481 (finding the parties agreed to delegate issue of arbitrability when terms required arbitration "pursuant to . . . the commercial arbitration rules and procedures of JAMS, Inc."). In fact, courts are particularly inclined to find incorporation by reference sufficient where, as here, terms direct consumers to the relevant arbitral forum's website. *See, e.g.*, *Patrick*, 93 F.4th at 481; *see also* Ex. B at 14 ("The NAM Rules are available online at www.namadr.com . . . .").

---

[2] Plaintiffs briefly argue that language providing that arbitration may proceed before other arbitration providers in the event that NAM is unavailable somehow suggests that the parties did not intend to delegate arbitrability to the arbitrator. Opp. at 9. This argument is not persuasive. The inclusion of backup forums does not undermine the parties' intent to incorporate the NAM Rules; rather, it simply ensures an alternative if NAM is unavailable.

Plaintiffs have failed to establish that the parties did not delegate to the arbitrator the question of whether their agreement to arbitrate reaches plaintiffs' claims. As such, since they do not dispute they agreed to arbitrate, the Court should compel this case to arbitration.

## C. The Delegation Clause Is Not Unconscionable

Plaintiffs also try to avoid their commitment to arbitrate by claiming the delegation clause they agreed to is unconscionable and therefore invalid. But this argument fails, too. A party seeking to invalidate a contractual provision as unconscionable must prove both procedural and substantive unconscionability. *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1023 (9th Cir. 2016) (citation omitted). "A sliding scale is applied so that the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Serafin v. Balco Props. Ltd.*, 235 Cal. App. 4th 165, 178 (2015) (citation omitted). Here, there is neither procedural nor substantive unconscionability.

### 1. Plaintiffs fail to identify any supposed unconscionability in the delegation clause specifically, as opposed to the arbitration agreement generally

As an initial matter, Plaintiffs do not identify any procedural or substantive unconscionability in the delegation clause itself. *See* Opp. at 12–14. Instead, they take aim at other, unrelated portions of the Terms and the NAM Rules that govern the procedures to be applied during the arbitration, without offering any explanation as to how these provisions relate to the supposed unconscionability of the delegation clause. This is improper, as disputes regarding the unconscionability of an arbitration agreement as a whole—as opposed to disputes regarding a delegation clause—are reserved for the arbitrator. *See, e.g.*, *Saperstein*, 476 F. Supp. 3d at 975 ("[I]f a party challenges specifically the enforceability of the delegation clause, the district court must consider the challenge, but if a party challenges the . . . arbitration agreement as a whole, the challenge is for the arbitrator."); *Fischer*, 2024 WL 382181, at *15 ("To challenge the delegation's validity, [p]laintiff must both mention the delegation provision *and* make arguments specific to it."); *see also Holley-Gallegly v. TA Operating, LLC*, 74 F.4th 997, 1002 (9th Cir. 2023) (explaining that a party may cite "provisions outside of the delegation clause" in making unconscionability arguments, provided it "must explain how those provisions make the fact of an arbitrator deciding

arbitrability unconscionable") (citation omitted); *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 73 (2010) (denying request to consider unconscionability of arbitration agreement as a whole when considering unconscionability of delegation provision, because no unconscionability challenges were "specific to the delegation provision").

As Plaintiffs have not raised any arguments as to the unconscionability of the delegation clause specifically—as opposed to the arbitration agreement as a whole—there is no basis for the Court to find the delegation clause unconscionable. And as any issues regarding the alleged unconscionability of the arbitration agreement as a whole are for the arbitrator to decide, the Court need not address Plaintiffs' other unconscionability arguments.

### 2. The delegation clause is not procedurally unconscionable

Although Plaintiffs' procedural unconscionability arguments are not addressed to the delegation clause specifically and the Court need not address them, Plaintiffs' procedural unconscionability arguments would still fail on the merits. To support their claims of procedural unconscionability, Plaintiffs suggest that (1) the Terms are a contract of adhesion, and (2) the Terms can be unilaterally updated and are therefore unconscionable.

#### i. Contracts of adhesion are not per se procedurally unconscionable, and Plaintiffs' agreement to the Terms was not unfair

As to Plaintiffs' first argument, an adhesion contract is not per se unconscionable. *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261 (9th Cir. 2017); *see also* Order Granting Motion to Compel Arbitration at 10, *Sheppard v. Compass*, No. 22-cv-03237-TLT (N.D. Cal. Feb. 27, 2023), ECF No. 42 (Thompson, J.) (same). Were this not the case, virtually every consumer agreement would be deemed unconscionable. *See Donovan*, 649 F. Supp. 3d at 952 ("[A] contract of adhesion is a 'standardized contract, which . . . relegates to the subscribing party only the opportunity to adhere to the contract or reject it.'" (citation omitted)). Rather, if a contract of adhesion exists, the question shifts to "whether circumstances of the contract's formation created such oppression or surprise that closer scrutiny of its overall fairness is required." *Id.* (citation omitted); *see also* Order Granting Motion to Compel Arbitration at 3–4, *Pierce v. Tesla*, No. 22-cv-03177-TLT (N.D. Cal. Jan. 30, 2023), ECF No. 29 (Thompson, J.).

Although they have the burden of proving unconscionability, Plaintiffs do not provide any explanation as to how their agreement to the Terms was supposedly unfair. While Plaintiffs suggest that the "Terms apply even at the moment of browsing Humble Bundle's website (before a consumer can even read them)," Opp. at 11, they do not dispute that they each expressly agreed to the Terms, nor do they otherwise attempt to explain the basis for this contention. *Cf.* Mot. at 7–8 (Humble Bundle's Terms are a "sign-in wrap agreement" that requires users to "mak[e] some type of affirmative act" to signal agreement, such as "creating an account, signing into an account, and completing a purchase" (citations omitted)). Nor do Plaintiffs identify any other indicia of unfairness, such as a lack of access to reasonable market alternatives. *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1139 (N.D. Cal. 2010) (declining to find unconscionability in a warranty agreement where "the complaining party had reasonably available alternative sources of supply from which to obtain the desired goods or services free of the terms claimed to be unconscionable" (citation omitted)); *Rojas v. Bosch Solar Energy Corp.*, 386 F. Supp. 3d 1116, 1131 (N.D. Cal. 2019) (finding plaintiffs needed to allege facts of lack of access to market alternatives before a showing of procedural unconscionability could be met); *see also, e.g.*, *Donovan*, 649 F. Supp. 3d at 953 (finding no procedural unconscionability where "nothing in the record" indicated Coinbase was "the only option for cryptocurrency services").

### ii.   The unilateral modification provision is not procedurally unconscionable

As to Plaintiffs' second argument that the unilateral modification provision renders the agreement procedurally unconscionable, the Ninth Circuit has held that unilateral modification is not per se unconscionable.[3] In *Patrick*, the court explained that "the presence of a unilateral

---

[3] While Plaintiffs' objections to the modification provision appear in their discussion of procedural unconscionability, the overwhelming majority of cases evaluate such provisions as part of substantive, rather than procedural, unconscionability. *See, e.g.*, *Patrick*, 93 F.4th at 480; *Gonzalez v. Interstate Cleaning Corp.*, No. 19-cv-07307-KAW, 2020 WL 1891789, at *6–7 (N.D. Cal. Apr. 16, 2020) ("[U]nilateral modification terms are not substantively unconscionable . . . ."); *but see Heckman v. Live Nation Ent*, 120 F.4th 679, 682 (9th Cir. 2024) (discussing provisions allowing defendant to make both prospective and retroactive changes to terms as evidence of procedural unconscionability). Regardless of how that issue is presented, Plaintiffs cannot invalidate their agreement to arbitrate by relying on the modification provision in Humble Bundle's Terms.

modification provision, without more, does not render a separate arbitration clause at all substantively unconscionable" as "the implied covenant of good faith and fair dealing prevents a party from exercising its rights under a unilateral modification clause in a way that would make it unconscionable." 93 F.4th at 480 (citation omitted). And here, Plaintiffs cannot show anything "more" that makes this clause unconscionable:

*First*, the Terms provide that "if Humble Bundle makes any future change to this Arbitration Agreement (other than a change to the Notice Address), you may reject any such change by sending Humble Bundle an email to dispute.notice@ziffdavis.com within 30 days of the posting of the amended arbitration agreement[.]" Ex. B. at 16. That users can simply opt out of any changes via a straightforward mechanism defeats any showing of unconscionability. *See, e.g.*, *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016) (finding terms with an opt-out provision not procedurally unconscionable, because "the existence of a meaningful right to opt-out of [arbitration] necessarily renders [the arbitration clause] (and the delegation clause specifically) procedurally conscionable as a matter of law").

*Second*, this case is readily distinguishable from *Heckman v. Live Nation Entertainment, Inc.*, where the defendant unilaterally and retroactively changed arbitral forums via an update to its Terms. 120 F.4th at 681. Here, Plaintiffs do not claim that the arbitration terms have changed, nor is there any suggestion that they would be forced to agree to such changes in order to access previously purchased content. *Id.* at 683. Thus, Plaintiffs have failed altogether to establish that the delegation clause is procedurally unconscionable.

### 3.   The delegation clause is not substantively unconscionable

To support their claims of substantive unconscionability, Plaintiffs point to provisions in the NAM Rules limiting both parties' right to discovery and appeals. These provisions do not come anywhere close to meeting the high threshold for substantive unconscionability. Rather, both are mutually applicable and intended to further the very aims of arbitration—that is, "resolving disputes more expeditiously and with greater flexibility than litigation." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1011 (9th Cir. 2004). By contrast, the test for substantive unconscionability looks to whether an arbitration provision includes terms that "shock the

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION

conscience." *Lang v. Skytap, Inc.*, 347 F. Supp. 3d 420, 428–29 (N.D. Cal. 2018) (citation omitted); *see also* Order Granting Motion to Compel Arbitration at 11, *Sheppard*, No. 22-cv-03237-TLT, ECF No. 42 (same); *see also Tompkins*, 840 F.3d at 1023 (substantive unconscionability "is concerned not with a simple old-fashioned bad bargain but with terms that are unreasonably favorable to the more powerful party" (citations and internal quotations omitted)). That test clearly is not met here.

*First*, Plaintiffs argue that the limited, discretionary discovery provided under the NAM Rules would necessarily preclude them from obtaining evidence of supposed wrongdoing. But provisions that give an arbitrator discretion over discovery are not unconscionable. *See Poublon*, 846 F.3d at 1270 (finding no substantive unconscionability in limited discovery, noting that "arbitration is meant to be a streamlined procedure"); *see also Marks v. Bridgestone Americas, Inc.*, No. 15-cv-05153-CAS, 2015 WL 13919149, at *12 (C.D. Cal. Nov. 16, 2015) (finding arbitrator's discretion to order discovery not unconscionable because merely speculating "how the arbitrator might interpret or apply the provision does not render the provision unconscionable" (internal quotations omitted)). Further, the NAM Rules—which give the arbitrator the authority to order discovery "by way of document production, interrogatory, deposition, or otherwise, as the [a]rbitrator(s) considers necessary for a full and fair exploration of the issues in dispute" (NAM Rule 18(A))—are readily distinguishable from the applicable rules in *Heckman*, which provided for "*no right to discovery*" whatsoever. 120 F.4th at 679.

*Second*, Plaintiffs argue that there is no right to appeal. Opp. at 13. They are incorrect, as the NAM Rules specifically provide that the parties can mutually agree to provide for an appeals process, which would then be subject to NAM's Appellate Dispute Resolution Rules and Procedures. NAM Rule 36. Notably, unlike the asymmetric arbitration provision at issue in *Heckman*, the appeal process is not "functionally reserved" for Humble Bundle but is instead mutually available upon agreement of the parties. 120 F.4th at 686. In short, there is nothing unconscionable about the delegation clause.

### D. The Arbitration Agreement Is Not Unconscionable

Because the delegation clause is not unconscionable, the Court cannot consider any arguments as to the arbitration provision's unconscionability as a whole, as "arguments [that] go to the validity and enforceability of the agreement . . . must be resolved by the arbitrator." *Rendon v. T-Mobile USA, Inc.*, 747 F. Supp. 3d 1314, 1320 (C.D. Cal. 2024), *reconsideration denied*, No. 24-cv-01666, 2024 WL 5256491 (C.D. Cal. Nov. 4, 2024); *see also Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022) ("[I]f the parties did form an agreement to arbitrate containing an enforceable delegation clause, all arguments going to the scope or enforceability of the arbitration provision are for the arbitrator to decide in the first instance."). But even if the Court were to reach this question, the underlying arbitration agreement is not unconscionable. Plaintiffs only argument on this score is that the staging process for mass arbitrations—which applies only where "25 or more claimants (including you) submit Notices or seek to file demands for arbitration raising similar claims against the other party or related parties by the same or coordinated counsel or entities"—would unconscionably delay resolution of their claims. Ex. B at 16. Even if the Court could reach this argument, it is unavailing for several reasons:

*First*, although Plaintiffs' counsel represents that they have retained thousands more claimants, those individuals—and their hypothetical concerns regarding staging—are not before this Court. Rather, the Plaintiffs here are four individuals, whose claims would not necessarily be subject to the provisions regarding Mass Filing.

*Second*, even if the Court were to consider the consequences for absent claimants, these concerns are unfounded. Humble Bundle's Motion cited a number of cases holding that its staging procedure for Mass Filings is reasonable and not unconscionable. Mot. at 13–14. Instead of engaging with any of these cases, Plaintiffs cite a readily distinguishable case where claims were only allowed to proceed in groups of ten and the statute of limitations was not tolled in the meantime, such that "[t]hose in the queue who are not able to file within the limitations period would be forever barred." *MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024, 1042 (N.D. Cal. 2022). Here, by contrast, the Terms provide that claims will be tolled at the outset of the arbitration proceedings. Ex. B. at 17 ("Any applicable limitations period (including statute of limitations) and

any filing fee deadlines shall be tolled beginning when the Mandatory Pre-Arbitration Notice and Informal Dispute Resolution Procedures are initiated . . . ."). Further, claims are to proceed in groups of 50, 100, and 200. *Id.* This structure has been held to be "a far cry from that of MacClelland," because "many more arbitrations would occur in a much quicker timeframe" while the relevant agreement "tolls the applicable statute of limitations." *Brooks v. WarnerMedia Direct, LLC*, No. 23-11030-KPF, 2024 WL 3330305, at *18 (S.D.N.Y. July 8, 2024). Plaintiffs' absurd hypothetical—by which they speculate that resolution of 4,500 claims could take upwards of 45 years (Opp. at 2–3)—is just that, in that it arbitrarily assumes the length of time that each stage will take, and discounts altogether the potential for any efficiencies in later stages, which would proceed with the benefit of legal and factual development obtained in earlier stages. There is nothing unconscionable about Humble Bundle's Terms, which fall far short of "shock[ing] the conscience." *Lang*, 347 F. Supp. 3d at 429.

### III.    CONCLUSION

The Plaintiffs each agreed to arbitrate this dispute. Their Opposition does not change this fact. Humble Bundle respectfully requests the Court compel arbitration and stay the action.

DATED: July 14, 2025                                        **PERKINS COIE LLP**

By: *James G. Snell*
James G. Snell (Bar No. 17307)
Lauren J. Tsuji (Bar No. 300155)
Anna Thompson-Lanners (*Pro Hac Vice*)

*Attorneys for Defendant Humble Bundle, Inc.*

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION