United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAVID WRAY, et al.,
Plaintiffs,
v.
HUMBLE BUNDLE, INC.,
Defendant.

Case No. 25-cv-01592-TLT

**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION**

Re: Dkt. No. 32

On February 14, 2025, Plaintiffs David Wray, Jamahl Farrington, Matthew Burrow, and Nikolas Pullen ("Plaintiffs") filed this class action against Humble Bundle, Inc. ("Defendant") alleging violations of the Video Privacy Protection Act ("VPPA"). ECF 1.

Before the Court is Defendant's motion to compel arbitration. ECF 32. The Court finds this motion appropriate for resolution without oral argument and takes this matter under submission. *See* L.R. 7-1(b) (authorizing courts to dispense with oral argument on any motion except where oral hearing is required by statute). After review and consideration of the motion, briefings, attachments and exhibits thereto, the Court GRANTS Defendant's motion to compel arbitration and STAYS the action pending arbitration.

## I. BACKGROUND

### A. Procedural History

On February 14, 2025, Plaintiffs filed a class action complaint alleging that Defendant disclosed their personally identifiable information to a third party in violation of the VPPA, 18 U.S.C. § 2710 *et seq*. ECF 1. Plaintiffs seek declaratory relief, injunctive relief, statutory damages for each violation of the VPPA, and attorneys' fees and costs. *Id.* ¶ 111. On June 20, 2025, Defendant filed a motion to compel arbitration against all Plaintiffs under the Federal

United States District Court
Northern District of California

Arbitration Act, 9 U.S.C. § 1 *et seq.*, and to stay this matter. ECF 32. Plaintiffs filed a timely opposition on July 8, 2025. ECF 36. Defendant filed a timely reply on July 14, 2025. ECF 37. On August 21, 2025, Defendant filed a statement of recent decision in support of its motion to compel arbitration. ECF 38.

**B. Facts**

**i. Relationship Between the Parties**

Defendant is an online video game retailer selling individual video games, a subscription service for video games, e-books, software, and other digital content through humblebundle.com (the "Website"). ECF 1 ¶¶ 2, 42. Plaintiffs are account holders with Defendant who have maintained accounts within the past two years and have purchased at least one video game from the website. ECF 1 ¶¶ 47–49, 58–60, 64–66, 70–72.

**ii. Defendant's Terms and Conditions**

Plaintiffs do not dispute that Defendant requires customers to sign up for an account when purchasing content on the Website. *Id.* ¶ 42. Plaintiffs also do not dispute that they each created an account. *Id.* ¶¶ 47, 58, 64, 70. Customers can create accounts on the Website by clicking a "Sign Up" button displayed at the top of every page or by creating a password while completing a purchase. ECF 32-1, Declaration of Shawn Cheatham in Support of Motion to Compel Arbitration ("Cheatham Decl."), ¶ 5.

If a customer creates an account by clicking the "Sign Up" button on the top of the Website, the screen displays an option for customers to enter an email address and create a password. ECF 1 ¶ 44; Cheatham Decl., Ex. A at Fig. 1. The accompanying "Sign Up" button is blue. Cheatham Decl., Ex. A at Fig. 1. Users are also provided with an option to "Sign Up With Google." *Id.* Below the two buttons is an acknowledgement that reads, "[b]y signing up, you confirm that you are 13 years of age or older, and you agree to Humble Bundle's Terms & Conditions and Privacy Policy." *Id.* The acknowledgement contains hyperlinks to the "Terms & Conditions" and "Privacy Policy." *Id.*; ECF 1 ¶ 44.

If a customer is not logged into an account at the time of purchase, the checkout screen displays a notice that reads, "[y]ou must be logged into a Humble Bundle account to purchase

United States District Court
Northern District of California

your cart." Cheatham Decl., Ex. A at Fig 5. This screen prompts users to log in or to "CREATE A HUMBLE BUNDLE ACCOUNT." *Id.* At checkout, below the "Continue to Payment" button, the Website displays another acknowledgement that reads, "[b]y completing this purchase, you agree to the Terms of Service and Privacy Policy." Cheatham Decl., Ex. A at Figs. 2, 3. Both are hyperlinks that display Defendant's terms in their entirety. Cheatham Decl., ¶ 7. On the right-hand side of the checkout page, the Website displays an "Order Summary" box that stays visible on the page even if the customer scrolls down. *Id.*, Ex. A at Fig. 4. This box contains the following text: "BUYERS ARE GRANTED ONLY A LICENSE FOR SOME DIGITAL PRODUCTS IN THIS PURCHASE. SEE TERMS FOR MORE DETAILS." *Id.* "Terms" is a hyperlink. *Id.*

The parties do not dispute that both at account creation and checkout, the Website displays a hyperlink to Defendant's "Terms & Conditions" in their entirety. Cheatham Decl., ¶ 7; ECF 1 ¶ 44. Plaintiffs dispute whether this provides sufficient notice of the terms to which the consumer will be bound. ECF 1 ¶ 45.

The second paragraph of the "Terms & Conditions" document effective on June 1, 2023 states, "THESE TERMS CONTAIN A BINDING ARBITRATION CLAUSE AND A CLASS ACTION WAIVER." Cheatham Decl., Ex. B at 1. This text stands alone. *Id.*

Section 10 of the document is titled "OTHER LEGAL TERMS." *Id.* at 11. Subsection (a) states:

> Humble Bundle reserves the right, at any time and from time to time, to update, revise, supplement, and otherwise modify these Terms and to impose new or additional rules, policies, terms, or conditions on your use of the Service or Products. If we amend these Terms, we will post the amended version of these Terms on the Site. If a material change is made to these terms, then Humble Bundle will post a notice of humblebundle.com. You understand and agree that you will be deemed to have accepted the amended Terms if you use the Service after any such change.

Cheatham Decl., Ex. B at 11. The arbitration notice at subsection (i) contains a short description of arbitration, the discovery available, damages available, and use of a neutral arbitrator. *Id.* It also disclaims, "[a]ny arbitration under this Agreement will take place on an individual basis; class arbitrations and class actions are not permitted." *Id.* Below this notice is the arbitration agreement in full. *Id.*

**iii. Arbitration Agreement**

The parties also do not dispute the existence of the arbitration agreement or that it is contained in the long form "Terms & Conditions" document. Cheatham Decl., ¶ 7; ECF 1 ¶¶ 80–82; ECF 36 at 5. The Court will describe several relevant features of the arbitration agreement.

**1. National Arbitration & Mediation (NAM) Rules**

The arbitration agreement states:

> The arbitration will be governed by applicable rules of National Arbitration and Mediation ("NAM") (including the Comprehensive Dispute Resolution Rules and Procedures and/or the Supplemental Rules for Mass Arbitration Filings, as applicable… as modified by this Arbitration Agreement, and will be administered by NAM…. [t]he NAM Rules are available online at www.namadr.com, by calling NAM at 1-800-358-2550, or by requesting them in writing at the Notice Address.).

Cheatham Decl., Ex. B at 14. The agreement also states, "[i]f NAM is unavailable or unwilling to do so, another arbitration provider shall be selected by the parties that will do so, or if the parties are unable to agree on an alternative administrator, by the court pursuant to 9 U.S.C. §5." *Id.*

NAM Rule No. 18(A) provides that, "[t]he parties shall conduct discovery on a voluntary basis, the procedure of which shall be agreed to by the parties." ECF 36-1, Declaration of Robert Jimenez ("Jimenez Decl."), Ex. A at 12. "Failing such agreement, the Arbitrator(s) shall have the power to order such discovery, by way of document production, interrogatory, deposition, or otherwise, as the Arbitrator(s) considers necessary for a full and fair exploration of the issues in dispute." *Id.*

NAM Rule No. 36 provides that, "[i]f the parties mutually agree in writing to provide for an appeal process with respect to the arbitration, such appeal would then be subject to NAM's Appellate Dispute Resolution Rules and Procedures." *Id.* at 22.

**2. Express Delegation Clause**

The arbitration agreement states, "[a]ll issues are for the arbitrator to decide, except as otherwise expressly provided herein." Cheatham Decl., Ex. B at 15. The parties did not identify any language in the arbitration agreement that specifically delegates questions of enforceability to the arbitrator, nor did they identify any language that prohibits such a delegation. *See* ECF 37 at 2.

United States District Court
Northern District of California

**3. Modification Clause**

The arbitration agreement states, "[n]otwithstanding any provision to the contrary, if Humble Bundle makes any future change to this Arbitration Agreement (other than a change to the Notice Address), you may reject any such change by sending Humble Bundle an email to dispute.notice@ziffdavis.com within 30 days of the posting of the amended arbitration agreement…[s]uch an opt-out email must… include a statement, personally signed by you, that you wish to reject the change to the Arbitration Agreement." Cheatham Decl., Ex. B at 16.

**4. Mass Filing Provisions**

The arbitration agreement describes a series of "mass filing" procedures, which apply when twenty-five or more claimants using the same counsel seek to arbitrate "similar claims." *Id.* at 16–17; ECF 1 ¶¶ 85–86. A collection of similar filings triggers a staged procedure beginning with each side selecting twenty-five claims to be arbitrated first. Cheatham Decl., Ex. B at 17. Each of these arbitrations is assigned by default to a different arbitrator. *Id.* When the first twenty-five arbitrations are complete, the parties are required to mediate the remaining claims. *Id.* If this does not result in resolution of the remaining claims, a second stage begins and each side selects fifty claims to proceed in individual arbitration. *Id.* If the following mediation does not resolve the remaining claims, the third stage proceeds with one hundred claims selected by each side. *Id.*

**II. LEGAL STANDARD**

The Federal Arbitration Act (FAA) governs any arbitration agreement that is "written" and in a contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. Under the FAA, arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* As the Supreme Court has explained, "[t]he overarching purpose of the FAA ... is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). This "liberal federal policy favoring arbitration agreements" applies "notwithstanding any state substantive or procedural policies to the

contrary." *Id.* at 346 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

In deciding whether to compel arbitration, a district court must determine (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). Courts "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). If the court is satisfied "that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses*, 460 U.S. at 24–25.

## III. DISCUSSION

Defendant argues (A) Plaintiffs agreed to Humble Bundle's Terms & Conditions, including an agreement to arbitrate their claims; (B) the parties delegated the question of arbitrability to the arbitrator; (C) the delegation provision is not unconscionable; (D) even if the agreement did not delegate the question of arbitrability, Plaintiffs' claims fall within the arbitration provision and the arbitration agreement is not unconscionable. ECF 32.

### A. The Parties Entered into an Arbitration Agreement

Defendant argues that each named Plaintiff agreed to Humble Bundle's Terms & Conditions and, as a result, the arbitration provision. ECF 32 at 5. Plaintiffs "do not deny the existence of the arbitration agreement," ECF 36 at 5, nor do they dispute that they each assented to Defendant's "Terms & Conditions" and the associated arbitration provision when they signed up for a Humble Bundle account and each time they made an online purchase thereafter. *Id.* ¶¶ 42, 47, 58, 64, 70. Accordingly, it is undisputed that an arbitration agreement exists under the June 1, 2023 Terms & Conditions. The FAA governs this dispute. *Brennan*, 796 F.3d at 1129.

### B. The Parties Delegated Gateway Issues to the Arbitrator

Defendant argues that since the arbitration agreement contains a clause delegating "[a]ll issues" to the arbitrator, ECF 32 at 11 (citing Cheatham Decl., Ex. B at 15), the question of

United States District Court
Northern District of California

whether the arbitration agreement is valid and enforceable is "for the arbitrator to decide in the first instance." *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022). Plaintiffs argue that the agreement contains no delegation provision. ECF 36 at 5–10.

"[P]arties may delegate the adjudication of gateway issues to the arbitrator if they 'clearly and unmistakably' agree to do so." *In re BAM Trading Servs. Inc. Sec. Litig.*, 733 F.Supp. 3d 854, 862 (N.D. Cal. 2024) (citing *Portland GE v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017)). If there is a valid delegation of gateway issues, the Court cannot decide questions of arbitrability, whether the arbitration agreement is enforceable, and whether the arbitration agreement applies to a given dispute. *Portland GE*, 862 F.3d at 985.

Defendant argues gateway issues are delegated (i) through an express delegation clause in the arbitration agreement; and (ii) by incorporating NAM's arbitration rules, which "empower arbitrators to decide questions of their jurisdiction." ECF 32 at 11–12.

**i. The Express Delegation Clause Does Not "Clearly and Unmistakably" Delegate Gateway Issues**

Defendant argues that express delegation language in the arbitration agreement states, "[a]ll issues are for the arbitrator to decide, except as otherwise expressly provided herein." ECF 32 at 11; Cheatham Decl., Ex. B at 15. Plaintiffs argue that because this provision does not specifically reference issues of enforceability or arbitrability, the "generic verbiage" does not constitute a clear and unmistakable delegation. ECF 36 at 6–7.

The question of arbitrability is ordinarily left to the court, and only a "clear and unmistakable" delegation of gateway issues can overcome this presumption. *Momot v. Mastro,* 652 F.3d 982, 987 (9th Cir. 2011); *Sandoval-Ryan v. Oleander Holdings LLC,* 58 Cal. App. 5th 217, 223 (Cal. Ct. App. 2020).

Although the language here is broad enough to encompass "[a]ll issues," Cheatham Decl., Ex. B at 15, courts in the Ninth Circuit require more specificity. *Momot*, 652 F.3d at 987 (applying a "more rigorous standard in determining whether the parties have agreed to arbitrate the question of arbitrability"). Express delegation clauses clearly and unmistakably delegate gateway issues when they name the issues that are delegated, including arbitrability, enforcement, and/or

the scope of the arbitration agreement. *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208-09 (9th Cir. 2016) (holding clause that delegated "the authority to decide issues *relating to the 'enforceability, revocability or validity of the Arbitration Provision*'" sufficiently clear) (emphasis added); *Aggarwal v. Coinbase, Inc.*, 685 F.Supp. 3d 867, 878 (N.D. Cal. 2023) (holding clause delegating "any Dispute, including, without limitation, disputes arising out of or related to the interpretation or application of the Arbitration Agreement, *including the enforceability, revocability, scope, or validity* of the Arbitration Agreement" clear and unmistakable) (emphasis added); *Johnson v. Charter Commc'ns, Inc*, No. 21-cv-06135, 2022 WL 2673091, at *3 (N.D. Cal. June 2, 2022) (holding that "all issues are for the arbitrator to decide (*including the scope of the arbitration clause*)" leaves no "ambiguity as to that delegation") (emphasis added).

The Court finds that the express delegation clause lacks the clarity required to be a "clear and unmistakable" delegation of gateway issues. *First Options of Chicago*, 514 U.S. at 945 (holding "silence or ambiguity on the 'who should decide arbitrability' point is insufficient, since it might "force unwilling parties to arbitrate a matter, they reasonably would have thought a judge, not an arbitrator, would decide"). Accordingly, the delegation clause is not sufficient evidence of the delegation of gateway issues.

**ii. Incorporation of the NAM Rules "Clearly and Unmistakably" Delegates Gateway Issues to the Arbitrator**

Defendant argues that the arbitration agreement also delegates gateway issues by incorporating NAM's arbitration rules into the agreement. ECF 32 at 12. Plaintiffs dispute that the arbitration agreement incorporates the NAM rules for three reasons: both parties are not sophisticated, the language only *references* NAM, and other features of NAM's involvement make clear incorporation impossible. ECF 36 at 7–8.

The arbitration agreement states in subsection (iii), "Arbitration Procedure," "[t]he arbitration will be governed by applicable rules of National Arbitration and Mediation ('NAM') (including the Comprehensive Dispute Resolution Rules and Procedures and/or the Supplemental Rules for Mass Arbitration Filings, as applicable)." Cheatham Decl., Ex. B at 14.

NAM Rule No. 17(B) assigns the arbitrator "the authority to determine any issue about the

interpretation and applicability of these Rules and conduct of the Arbitration proceeding. The Arbitrator(s) shall have authority to determine jurisdiction and arbitrability including, but not limited to, any issue regarding the validity, existence, formation, or scope of the agreement under which Arbitration is being sought." Jimenez Decl., Ex. A at 12.

First, Plaintiffs argue that incorporating another forum's rules into an arbitration agreement only evinces a clear and unmistakable intent to delegate when both parties are sophisticated. ECF 36 at 8 (citing *Brennan*, 796 F.3d at 1131). Plaintiffs cite several cases since *Brennan* that hold requiring an unsophisticated party to locate and read the relevant delegation rules prevented the delegation provision from being clear and unmistakable. *MacClelland v. Cellco P'ship*, 609 F.Supp. 3d 1024, 1031 (N.D. Cal. 2022); *Magill v. Wells Fargo Bank, N.A.*, No. 4:21-cv-01877, 2021 WL 6199649, at *5 (N.D. Cal. June 25, 2021); *Ingalls v. Spotify USA, Inc.*, No. 16-cv-03533, 2016 WL 6679561, at *3–4 (N.D. Cal. Nov. 14, 2016); *Eiess v. USAA Fed. Sav. Bank*, 404 F.Supp. 3d 1240, 1253 (N.D. Cal. 2019).

However, the Ninth Circuit in *Brennan* clearly stated, "[o]ur holding today should not be interpreted to require that the contracting parties be sophisticated . . . before a court may conclude that incorporation of [another forum's] rules constitutes 'clear and unmistakable' evidence of the parties' intent. Thus, our holding does not foreclose the possibility that this rule could also apply to unsophisticated parties." 796 F.3d at 1130–31.

Because the court in *Brennan* "limit[ed] [its] holding to the facts of the present case," 796 F.3d at 1131, this Court declines to find a requirement that both parties be sophisticated. *See In re BAM Trading Servs.*, 733 F.Supp. 3d at 862–83 (holding no sophistication requirement and noting no such requirement exists in California law); *Singh v. Payward, Inc.*, No. 23-cv-01435, 2023 WL 5420943, at *7–8 (N.D. Cal. Aug. 22, 2023) (rejecting the "impractical line-drawing" of weighing parties' sophistication); *Bazine v. Kelly Servs. Glob., LLC*, No. 22-cv-07170, 2023 WL 4138252 at *6 (N.D. Cal. June 21, 2023) (holding no sophistication requirement); *Gerlach v. Tickmark, Inc.*, No. 21-cv-2768, 2021 WL 3191692, at *4–5 (N.D. Cal. July 28, 2021) (same).

Second, Plaintiffs argue that the arbitration agreement's reference to NAM rules does not clearly "incorporate" the rules but merely specifies *what* rules would govern a future arbitration.

United States District Court
Northern District of California

ECF 36 at 9. However, the Ninth Circuit approves of incorporation by reference in arbitration agreements that, like the one here, specify that another forum's rules will govern and instruct readers where to find them. *See Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1198 (9th Cir. 2024) (finding delegation where arbitration agreement references American Arbitration Association ("AAA") rules and provides website and phone access to rules). The Court disagrees that incorporation by reference is unclear. *See Portland GE*, 862 F.3d at 985 (holding incorporation "by reference" is sufficient).

Finally, Plaintiffs argue that there is no incorporation because the Terms & Conditions includes an alternate forum provision for when NAM is unavailable or rejects a case for administration. ECF 36 at 9; Cheatham Decl., Ex. B at 14. Plaintiffs also argue that incorporation is impossible because NAM reserves the right to modify its rules. ECF 36 at 9; Jimenez Decl., Ex. A at 5. Plaintiffs provide no authority to support these arguments and does not explain why these features render incorporation by reference impossible. The Court is unpersuaded that these features of NAM's rules render the incorporation void.

The arbitration agreement validly incorporates by reference the NAM rules, which delegate to the arbitrator authority to decide issues of "jurisdiction and arbitrability… validity, existence, formation, or scope" of the arbitration agreement. Jimenez Decl., Ex. A at 12. This incorporation is clear and unmistakable evidence that the parties agreed to "arbitrate arbitrability." *See Donovan*, 649 F.Supp. 3d at 951 (finding clear and unmistakable evidence where arbitration agreement incorporates AAA rules); *Brennan*, 796 F.3d at 1130 (same). *See also Oracle America, Inc., v. Myriad Group A.G.*, 724 F.3d 1069, 1074–75 (9th Cir. 2014) (holding that incorporation of [another forum]'s arbitration rules is supported by cases regarding incorporation of AAA rules). Accordingly, incorporation of the NAM rules clearly and unmistakably delegates gateway issues to the arbitrator.

### C. The Delegation Provision is Not Unconscionable

Defendant argues that the delegation provision is valid and enforceable. ECF 37 at 7–11. Plaintiffs argue that if the Court finds a delegation provision, any such provision here is procedurally and substantively unconscionable as a matter of law. ECF 36 at 10 (citing *Heckman*

*v. Live Nation Ent., Inc.*, 120 F.4th 670, 681 (9th Cir. 2024)).

Plaintiffs argue that the delegation provision is unconscionable by arguing that the arbitration agreement itself is unconscionable. ECF 36 at 11–14. Plaintiffs argue that in *Heckman*, the Ninth Circuit held that "[i]n deciding whether a delegation clause is unenforceable, [a court's] analysis is not limited to the bare text of the clause." 120 F.4th at 680. Defendant argues that the Court should not consider "unrelated" provisions of the arbitration agreement in deciding whether the delegation provision is unconscionable, but if it does, Plaintiffs must show that the other features "make the fact of an arbitrator deciding arbitrability unconscionable." ECF 37 at 7–8 (citing *Holley-Gallegly v. TA Operating, LLC*, 74 F.4th 997, 1002 (9th Cir. 2023)).

Courts in this district have interpreted *Heckman* as permitting consideration of features of an arbitration agreement beyond the delegation provision when determining if the delegation is unconscionable. *See Cordero v. Coinbase, Inc.*, No. 25-cv-04024, 2025 WL 2223495, at *8 n.4 (N.D. Cal. Aug. 5, 2025) (noting, without discussion, that "evaluat[ing] the entire agreement" "is required…for challenges to delegation provisions, since courts must consider how other provisions impact the delegation provision"); *Kyle Atkins, et al., v. Amplitude, Inc.*, No. 24-cv-04913, 2025 WL 2521732, at *3 (N.D. Cal Sept. 2, 2025) ("To analyze unconscionability as it applies to a delegation clause, courts 'must be able to interpret the provision in the context of the agreement as a whole, which may require examining the underlying arbitration agreement as well.'") (citing *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1012 (9th Cir. 2023)); *Bonhomme v. Uber Techs., Inc.*, No. 24-cv-07998 2025 WL 1745729, at *3 (N.D. Cal. June 24, 2025) (examining "contract of adhesion" when considering delegation's unconscionability); *Van De Hey v. EPAM Systems, Inc.*, No. 24-cv-08800, 2025 WL 829604, at *6 (N.D. Cal. Feb. 28, 2025) (same). Accordingly, the Court shall consider other features of the arbitration agreement in determining whether the delegation provision is procedurally or substantively unconscionable. *Heckman*, 120 F.4th at 680–81.

**i. The Delegation Provision is Not Procedurally Unconscionable**

Plaintiffs argue that the delegation provision is procedurally unconscionable because it occurs within a contract of adhesion and it contains a unilateral modification clause. ECF 36 at

11–12. Defendant argues that contracts of adhesion are not per se unconscionable, and that a provision allowing users to opt-out of changes reduces any alleged unconscionability of the modification clause. ECF 37 at 8–10.

Plaintiffs need to show both procedural and substantive unconscionability. *Heckman*, 120 F.4th at 681 (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000)). "Procedural unconscionability concerns the manner in which the contract was negotiated and the respective circumstances of the parties at that time, focusing on the level of oppression and surprise involved in the agreement." *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013).

First, Plaintiffs argue that the delegation provision is procedurally unconscionable because it occurs within a "contract of adhesion" and therefore contains "elements of oppression" and "inequality of bargaining power." ECF 36 at 11 (citing *Heckman*, 120 F.4th at 681–82). Defendant does not dispute that there is a contract of adhesion here; Defendant argues instead that contracts of adhesion are not per se unconscionable, ECF 37 at 8, and the Court agrees. *Terpin v. AT&T Mobility*, 118 F.4th 1102, 1113 (9th Cir. 2024) ("'[A]dhesion' contracts are not per se unconscionable under California law.").

Second, Plaintiffs argue that the arbitration agreement permits Defendant to "update, revise, supplement, and otherwise modify these Terms" "without notice," and similar provisions have established procedural unconscionability under California law. ECF 36 at 11–12 (citing Cheatham Decl., Ex. B at 11). Defendant argues that unilateral modification clauses, on their own, are not enough to create material unconscionability. ECF 37 at 9. Defendant also argues that users can opt-out of changes. *Id.* at 10.

When a contract is adhesive, the question shifts to "whether circumstances of the contract's formation created such oppression or surprise that closer scrutiny of its overall fairness is required." *OTO, L.L.C. v. Kho,* 8 Cal. 5th 111, 126 (2019).

In examining whether there are elements of "oppression or surprise" here, the Court finds it relevant that the arbitration agreement provides that if any "material change[s]" are made, "Humble Bundle will post a notice on humblebundle.com." Cheatham Decl., Ex. B at 11. Even

United States District Court
Northern District of California

when one party reserves the right to unilaterally modify terms, an arbitration agreement that "requires that notice be provided as to 'any material changes' to the terms" indicates that the agreement does not 'involve[] significant surprise." *Kyle Atkins*, 2025 WL 2521732, at *4 (finding "minimal procedural unconscionability").

The Court is also persuaded that the provision allowing users to opt-out of changes reduces the "oppression" that might arise from the adhesive nature of the contract as a whole. *Cf Donovan*, 649 F.Supp. 3d at 953 (discussing indicia of oppression including "take-it-or-leave-it" nature, lack of access to alternatives, and ability to "reject" updates to the User Agreement"). The arbitration agreement provides that users can "reject any such change by sending Humble Bundle an email to dispute.notice@ziffdavis.com within 30 days of the posting of the amended arbitration agreement." Cheatham Decl., Ex. B at 16. No such opportunity was available to users in *Heckman*, cited by Plaintiffs as support for the proposition that modification clauses create procedural unconscionability. ECF 36 at 11–12 (citing *Heckman*, 120 F.4th at 682–83).

Finally, Plaintiffs do not allege that the modification provision here applies retroactively like the unconscionable provision in *Heckman*. 120 F.4th at 678, 682–83 (finding "oppression" where changes in terms applied to "all claims arising out of prior ticket purchases"). Thus, the same "oppression" does not exist here. *Id.*

Accordingly, the Court finds only a minimum degree of procedural unconscionability in the arbitration agreement here because despite the adhesive nature of the contract and presence of a modification provision in the Terms & Conditions, there are no other indications of "oppression or surprise." *Serpa v. Cal. Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 704 (Cal. Ct. App. 2013) ("When, as here, there is no other indication of oppression or surprise, 'the degree of procedural unconscionability of an adhesion agreement is low.'"); *Van De Hey*, 2025 WL 829604, at *6.

**ii. The Delegation Provision is Not Substantively Unconscionable**

Plaintiffs argue that the delegation provision is substantively unconscionable because the NAM rules provide "no actual right to discovery" and "no right to appeal NAM decisions." ECF 36 at 12. Plaintiffs also argue that arbitration agreement's mass filing procedures make the entire

agreement substantively unconscionable. ECF 36 at 14. Defendant argues that limitations on discovery and appeals are permissible, ECF 32 at 13–15, and that the Court cannot consider the mass filing procedures when evaluating the delegation provision, ECF 37 at 10–13. If the Court does consider the mass filing procedures, Defendant argues they are reasonable and not unconscionable. ECF 37 at 12–13

If procedural unconscionability is low, Plaintiffs must demonstrate a high degree of substantive unconscionability to render the delegation provision unconscionable. *Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 982 (Cal. Ct. App. 2010). "Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *OTO*, 8 Cal. 5th at 125.

Plaintiffs' first argument is that they could be denied adequate discovery because the NAM rules require agreement from the parties on discovery limitations and give discretion to the arbitrator if no agreement is reached. ECF 36 at 11–12. NAM Rule No. 18(A) instructs parties to agree on discovery procedures, and it allows for "document production, interrogatory, deposition, or otherwise as the Arbitrator(s) considers necessary for a full and fair exploration of the issues in dispute" if no agreement is reached. Jimenez Decl., Ex. A at 12.

The California Supreme Court has held that limitations on discovery in arbitration are appropriate, as long as parties can "access [] essential documents and witnesses, as determined by the arbitrator." *Armendariz*, 24 Cal. 4th at 105–06. Even arbitration agreements that limit discovery to one deposition each, which this agreement does not, are not necessarily unconscionable. *Dotson*, 181 Cal. App. at 982–84; *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1270 (9th Cir. 2017).

Plaintiffs object to giving the arbitrator "discretion in deciding whether to allow for claimants to conduct discovery," ECF 36 at 13, but similar discretion was endorsed in *Armendariz*, where the arbitration agreement also gave the arbitrator discretion to decide whether and what discovery is essential. 24 Cal. 4th at 106. Unlike in *Heckman*, where plaintiffs had "no right to discovery" in binding mass arbitration proceedings, 120 F.4th at 679, the Court finds that Plaintiffs are not subject to a provision that bars meaningful discovery. *See Van De Hey*, 2025

WL 829604, at *7 (finding no substantive unconscionability where arbitration forum rules "give arbitrator control over discovery" and "place no limits except that discovery should be 'necessary to a full and fair exploration of the issues in dispute'").

Plaintiffs second argument is that "there is no right to appeal NAM decisions," which is unconscionable under *Heckman*. ECF 36 at 12. NAM Rule No. 36 provides that, "[i]f the parties mutually agree in writing to provide for an appeal process with respect to the arbitration, such appeal would then be subject to NAM's Appellate Dispute Resolution Rules and Procedures." Jimenez Decl., Ex. A at 22. *Heckman* is distinguishable; there, the Ninth Circuit took issue with the "asymmetrical" appeal provision that functionally reserved the right to appeal for defendants in that case. 120 F.4th at 686. The terms in *Heckman* "prohibit[ed] appeal of any of the arbitrator's decisions leading to the denial," *id.* at 687, while the terms here do no such thing. The arbitration agreement allows parties to agree on an appeals process. Jimenez Decl., Ex. A at 22.

Citing no other authority in support of their argument, the Court finds that Plaintiffs have not shown that NAM Rule No. 36 is "overly harsh" or "one-sided" such that it is unconscionable. *Cf Kyle Atkins*, 2025 WL 2521732, at *5 (holding even "asymmetrical effects of certain terms in the appeals provision are insufficient, without more, to make this arbitration agreement highly substantively unconscionable).

Plaintiffs' third argument is that the mass filing procedures render the arbitration agreement substantively unconscionable. ECF 36 at 14–15; Cheatham Decl., Ex. B at 16–17. Plaintiffs do not make any arguments that this provision renders the *delegation* provision unconscionable. If a Court is considering "provisions outside of the delegation clause in… an unconscionability challenge, [the party] must explain how those provisions make *the fact of an arbitrator deciding arbitrability unconscionable*." *Holley-Gallegly*, 74 F.4th at 1002. Because Plaintiffs have not made any arguments about how the mass filing procedures render the delegation of gateway issues unconscionable, this does not impact the Court's conclusion about the enforceability of the delegation provision. *Id.* (vacating district court order where party did not show that arbitration agreement provisions "ha[ve] any bearing on whether *the delegation of arbitrability to the arbitrator would be unconscionable*").

Accordingly, the Court finds that the arbitration agreement's provision delegating gateway issues to the arbitrator through incorporation of the NAM rules is neither procedurally nor substantively unconscionable. *In re BAM Trading Servs.*, 733 F.Supp. 3d at 862–64; *Van De Hey*, 2025 WL 829604, at *8.

**D. The Court Need Not Reach the Remaining Arguments**

Defendant argues that even if the delegation provision is unenforceable, Plaintiffs' claims fall within the arbitration provision. ECF 32 at 12-13. Plaintiffs also argues that the arbitration agreement itself is procedurally and substantively unconscionable for reasons unrelated to the delegation provision. ECF 36 at 14–15.

Because the Court finds that the parties validly delegated gateway questions to the arbitrator, the Court need not address remaining the parties' arguments as to the arbitration agreement's scope or enforceability. *Caremark, LLC*, 43 F.4th at 1030 ("[I]f the parties did form an agreement to arbitrate containing an enforceable delegation clause, all arguments going to the scope or enforceability of the arbitration provision are for the arbitrator to decide in the first instance."); *see also Donovan*, 649 F.Supp. 3d at 951 ("Since arbitrability must be determined first, the Court does not reach the issue of whether the arbitration agreement as a whole is unconscionable.").

**E. The Court Stays the Action Pending Arbitration**

Defendant requests that the Court stay this action pending arbitration of Plaintiffs' claims. ECF 32. "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024); *see* 9 U.S.C. § 3. Because the parties have an arbitrable dispute, the Court finds that a stay is appropriate here. *Smith*, 601 U.S. at 478.

/ / /

/ / /

/ / /

/ / /

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's motion to compel arbitration. The Court **STAYS** the action pending arbitration. The parties must provide status reports regarding the status of arbitration every sixty (60) days starting on November 20, 2025. The stay will be lifted on March 20, 2026, absent good cause.

IT IS SO ORDERED.

Dated: September 8, 2025

TRINA L. THOMPSON
United States District Judge